Dickman, J.
William Parks and others, the defendants in error, filed their petition in the probate court of Hocking county, Ohio, against the plaintiff in error, The Salt Creek Valley Turnpike Company. In it they allege that they are freeholders of Hocking county; that the defendant is a corporation organized under the laws of Ohio, and claims to own the toll-road known as the Salt Creek Valley turnpike, situate in Hocking county, and also claims the right to take, and is taking toll thereon.
* They further allege, that for more than six months, last past, to-wit, for the period of two years, the road has not been kept in repair, but, that the defendant has negligently suffered and allowed the same to be and remain, during all *573 of such time, and is now, uneven, infirm, and unsubstantial, and less than sixteen feet in width of artificial bed, and so narrow in most of its length as not to permit the passing of wagons thereon; that most of the repairs made to the road during such time, have been of sand and inferior creek-gravel, both of which materials were and are entirely unfit and unsuited for such purpose; that the bridges and culverts on the road are and have been during such time, out of repair, so as to inconvenience and endanger persons and animals traveling thereon. The prayer of the petition is that the defendant be notified, as required by law; and that upon hearing, the road may be adjudged and declared abandoned and vacated as a toll-road.
To the petition there was a demurrer, which was overruled, and the turnpike company excepted to the ruling. The company thereupon filed an answer, and therein said:
First—It admits that it is a corporation organized under the laws of Ohio, and claims to own, and does own the toll-road described in the petition; and claims the right to take, and is taking and exacting toll thereon. Second—It denies each and every other allegation in the petition.
The company demanded a jury trial. The demand was overruled, and to that ruling the company excepted. The cause came on for hearing, and the court having heard the evidence and argument of counsel, found that the road in the petition described had been for more than six months next preceding the filing of the petition, out of repair, as therein stated, and the same was declared abandoned and vacated as a toll-road. The company gave notice of its intention to appeal the cause to the court of common pleas. It also moved for a new trial, for the reasons, among others, that the court erred in overruling the demurrer filed; that the finding and judgment were against the law applicable to the case; and that the court erred in overruling the demand of the company for a jury trial. The motion for a new trial was overruled and exception taken. The cause was appealed to the court of common pleas, and also carried up on error. The appeal was dismissed by that court, on the ground that it had not jurisdiction; and the judgment, on *574 error, was affirmed. The cause was then taken to the circuit court on petition in error, and the judgments of the probate and common pleas courts were by that court affirmed. This court is asked to reverse the judgment of the circuit court.
The proceedings to have the Salt Creek Valley turnpike declared abandoned and vacated, were instituted under sections 4914,4915,4916, 4917 and 4918 of the Revised Statutes. Those sections provide as follows:
“Section 4914. Any turnpike or plankroad in the state upon which toll has been or may be authorized to be taken, which has been or may hereafter be out of repair for the period of six months, shall be deemed and held abandoned; and upon such abandonment being declared, as hereinafter provided, it shall be unlawful for any company or person owning or claiming to own such road, or any person owning or claiming to own the right to take tolls thereon, or any person in behalf of such company or person, to take, demand, or receive toll for the use of such road, or so much thereof as may be so declared abandoned.”
“Section 4915. Any twelve or more freeholders of a county in or through which any toll turnpike or plankroad, or any part thereof, has been or may hereafter be constructed, may present to the probate court of any county in which such road or part thereof is situate, their petition, stating that such road or part thereof has not been kept in repair for the preceding six months, and prajdng that the same may be declared abandoned and vacated as a toll road; to which petition the company or persons owning or claiming to own such road, and all persons owning or claiming to own the right to take toll thereon, shall be made defendants.”
“Section 4916. On the filing of such petition the court shall fix a time for the hearing thereof, not less than thirty days nor more than forty days thereafter, and issue a notice in writing to the defendants, stating the filing of such petition, and the day fixed for hearing thereof, and requiring the defendants to appear and answer, which notice shall be served in the same way as a summons in civil cases; and on the hearing of such petition, if the court find that the road *575 or part thereof has been out of repair as aforesaid, the court shall declare the same abandoned and vacated as a toll road.”
Section 4917 provides for giving notice by publication,, if any one of the defendants is a non-resident of the state.
“Section 4918. When a toll road, or part thereof, has been heretofore or shall be hereafter declared abandoned and vacated as aforesaid, it shall thereafter become a free road, to be kept in repair as provided in chapter ten.”
If any company fail to keep in repair its road outside the limits of a municipal corporation, for five days successively, or fail to build or rebuild any of the bridges or culverts across any or all of the streams crossing its road, for a period of six months, the company, under the statute, will become liable to any person injured, for the damages sustained by reason of such road or bridge being suffered to remain out of repair by the neglect of the company. And, no toll can be lawfully demanded and received at the gates between which the defective place or bridge is located, until the parts of the road found defective by duly appointed inspectors are fully repaired, or such order is made by the appellate court as to repairs and collection of tolls, as it may deem just. Sections 3484, 3485 Revised Statutes. But the immediate object of the proceedings against the plain tiff in error was to totally destroy its right to demand and receive toll, and to convert its turnpike into a free road.
The right to take toll upon a turnpike is a franchise (Seymour v. Turnpike Co., 10 Ohio, 476), and when properly exercised becomes a useful and valuable right—a source of income and the means of reimbursing the company for keeping the road in repair for safe and convenient use. And this franchise, which in the case at bar it is sought to extinguish, is to be regarded as property in the enlarged sense of the term. By statute, all turnpikes under the control of individuals or corporations, and held as property or as a franchise, is liable to sale upon execution, “ in the same manner as other property.” Section 3530 Revised Statutes. The purchaser of any such road upon the confirmation of the sale, will be entitled to hold and exercise all the corporate franchises purchased at such sale. Section 3533 Revised *576 Statutes. When there is an unsatisfied judgment against a turnpike company, a levy may be made upon the right of the company to take toll, “which right the officer shall advertise and sell as personal property.” Section 3535 Revised Statutes.
The laws relating to the foreclosure of mortgages upon real estate are applicable to the foreclosure of mortgages upon turnpikes and plank roads; and the purchaser at foreclosure sale of any such road will acquire and be entitled to exercise all the corporate franchises purchased, as fully as they belonged to such company before such sale, in any name that may be assumed by such purchaser. Sections 3493, 3494. It is thus manifest that the legislature has indued the franchise of taking toll upon turnpikes with the attributes of property, and has exercised its power of subjecting such franchise to execution at law and sale in chancery proceedings as it has other property.
The term property, as said in Caro v. Metropolitan Elevated Railroad Co., Superior Court of N. Y., Gen’l Term, January, 1880,19 Am. L. Reg. N. S., 384, is of the largest import, and embraces every mode in which it may be applied to public use, and extends to every species of valuable right and interest, and includes real and personal property, easements, franchises and incorporeal hereditaments. It is an elementary principle that “property consists in the free use, enjoyment and disposal of all one’s acquisitions without any control or diminution, save by the laws of the land.” 1 Black. Comm., 138. Property held by an incorporated company stands upon the same footing with that held by an individual, and a franchise cannot be distinguished from other property. “A franchise is property, and nothing more; it is incorporeal property, and it is its character of property only which imparts to it value, and alone authorizes in individuals a right of action for invasions or disturbances of its enjoyment.” Daniel J., in West River Bridge Co. v. Dix, 6 How., U. S., 507, 534.
When the turnpike was declared abandoned and vacated as a toll road by thg probate court, under the operation of the statute, the road was to become a free road, and its fran *577 cbise to collect toll thereby virtually forfeited. The judgment was predicated upon a finding by the court, that the xoad had been out of repair for the preceding six months, hut no jury was impanelled or allowed to inquire and determine whether the road was sufficiently out of repair to justify the inference that the company had abandoned it. There might be an omission to keep it in every respect in perfect repair ,for six months, and yet, the road might not be so much out of repair, as to furnish a reasonable presumption that it had been abandoned by the company. The road should be in so unfit a condition for all kinds of public travel, as fairly to lead to that conclusion: But to determine the existence of a state of facts upon which to base a destruction of property rights and interests, strict regard ■should be had in the investigation to the methods and safeguards prescribed by the constitution.
It is therefore urged in behalf of the turnpike company, that certain of the sections of the statute under which the proceedings were instituted to declare the road abandoned •and vacated, are in conflict with section 5, article I of the constitution: “ The right of trial by jury shall be inviolate.” In none of those sections is any provision made for a jury trial, or for the right to appeal whereby such jury could be had. The facts to be determined, namely, to what extent and how long the road had been out of repair, involved the destruction of a valuable corporate right of the company; and its answer filed in the probate court contained a denial of all allegations as to its failure to keep the road in repair. With such an issue, we think the constitution entitled the company to a jury trial. In Howell v. Fry, 19 Ohio St., 550, there was a summary proceeding before the probate court, under the act of February 26, 1843 (S. & C., 618), on complaint of an administrator against a party charged with embezzling and carrying away certain articles of property belonging to the estate. To the extent that the statute professed to authorize the court to render judgment for the value of the property where there was a controversy between the parties, it was pronounced unconstitutional. And this court said: “If the defendant denied the truth of the *578 charge, he had a constitutional right to a jury trial, and could not be deprived of that right by this summary proceeding, in which no provision is made for a jury trial, or for the right of appeal. The statutory provision authorizing a judgment can only be sustained as constitutional and valid in so far as it applies to a case where the defendant does not controvert the truth of the complaint.”
The section in the present constitution preserving inviolate the right of trial by jury, is found in the constitution of 1802, and in the same words. It is a guarantee of the continuance of a right recognized in the Great Charter, and substantially embodied in the constitutional compact of every state, as the great safeguard of life, liberty and property. At common law the want of reparation of highways, when visited with fine, penalty and forfeiture, was the subject of inquiry by a jury. In England, the inhabitants of the several parishes at large are, prima facie and of common right, bound to repair all highways lying within them, unless by prescription or otherwise they can throw the burden upon particular persons. For the non-repair of highways including turnpike roads, indictments are preferred against the respective parishes in which they are situate, and the parishes are subjected to fines, penalties and forfeitures, as the jury by their verdict find the defendant guilty of failing to keep the highways in proper repair. Woolrych on Ways, Chap. 6, 11.
In this country indictment is an appropriate remedy against towns for want of repair, and the obligation imposed upon them to maintain and repair highways as prescribed by statute, is very much the same as at common law —convenience and safety being the essential conditions of a well maintained highway both at common law and by statute. But, whether or not any given highway fulfils these conditions is a mixed question of law and fact, to be determined by the jury upon the circumstances of each particular case under proper legal instructions from the court. Angell & Dur. High., §§ 259, 275; Commonwealth v. City of Newburyport, 103 Mass., 129; Bragg v. City of Bangor, 51 Me., 532. And in determining the want of *579 reparation, if there be any, it is especially within the province of a jury, rather than of the court, to view the premises, consider the geographical features of the country, the location of the road, the difficulty of keeping it in a better condition without an unreasonable expense, the season of the year, the kind and amount of travel having occasion to pass over the road, with other considerations of a kindred character.
The determination of the issues in the probate court be-, ing properly within the domain of a jury; and as the result of the court’s finding the road to have been out of repair for the preceding six months was, that the franchise of the company to take toll was adjudged under the statute to have been extinguished, it may well be asked, whether the company was not, in contravention of the constitution of the state and of the United States, thereby deprived of its property “without due course of law,” or its equivalent, “due process of law,” when denied the privilege of a jury trial. If the legislature is vested with the power, under the constitution, to authorize a probate court to destroy valuable property rights of a turnpike company, because its road has been out of repair for the period of six months, it may be inquired, why may not the legislature authorize that court to do the same thing, although the road has not been out of repair longer than one day, for, it is not the abatement of a nuisance that is the subject of inquiry, but the taking and destruction of private property without a trial by jury.
It would be very difficult to frame a definition of the term “due course of law,” or “due process of law,” which would be accurate, complete and appropriate under all circumstances. But it is very obvious that every thing which takes the form of an enactment is not therefore to be deemed the law of the land, or due course or process of law. If this were so, then decrees and forfeitures in all possible forms, and acts confiscating the property of one person or class of persons, or a particular description of property, upon some view of public policy, where it could not be said to be taken for a public use, would be the law of the land,
*580 In Risser v. Hoyt, 53 Mich., 185, the act of 1833 to prevent preferences among creditors and to distribute the debt- or’s property equally, was held to be void, as violating (1) the constitutional provision which secures the right of trial by jury, since it looks to a summary disposition of cases which necessarily turn on questions of fact; and (2) the prohibition against taking property without due process of law. Under section 2 of the act, the court was empowered to proceed summarily upon the filingof a creditor’s petition,, and appoint a receiver who should take possession of all the debtor’s property, and marshal and distribute the same among the several creditors. Champion, J., in delivering the opinion of the court, said: “It was against the enactment of new laws which ignored the proceedings according to the course of the common law, and provided summary methods of determining legal rights, that the protecting shield of the constitution was required. The true criterion is, does the act destroy or materially impair the right of trial by jury according to the course of the common law, in cases proper for the cognizance of a jury? The nature of the controversy between the parties, and its fitness to be tried by a jury according to the rules of the common law, and not the nature of the tribunal, nor the summary mode of proceeding therein, should decide the question. * * Under section 2 of this act two facts, at least, must concur before the debtor can be deprived of his propert}'-; 1. He must owe three or more debts, two at least amounting in the aggregate to not less than $200; 2. He must have done some act, or omitted to do some áct, which this section prescribes shall entitle two or more creditors to file a petition. These acts are treated as a fraud upon the rights of other creditors, and constitute the gist of the proceedings. Such issues, involving the elements of fraud both as to the debtor and creditor alleged to have been preferred, are such as are peculiarly appropriate for a jury, and the right to have such trial cannot be taken away by a summary proceeding of this kind. * * From what has been said concerning the deprivation of the right of trial by jury, it is apparant that the act de *581 prives parties of their property without due process of law.”
In the federal courts it is the accepted doctrine, that while in actions in rem in admiralty property may be divested from an owner without the verdict of a jury, yet, in any proceeding at common law, even proceedings in rem, a citizen of the United States cannot be divested of his property except by verdict of a jury, under due process of law, in a proceeding in which he is in some manner a party, having opportunity to be heard, and having a day in court. In cases of seizures on land involving condemnation and forfeiture, the right of trial by jury is not infringed, for although in such cases the proceeding must be in general conformity to the course in admiralty, issues of fact, on the demand of either party, must be tried by a jury. The J. W. French, U. S. District Court, E. D. Virginia, October, 1882, 13 Fed. Rep., 916; Union Insurance Co. v. U. S., 6 Wall., 765; Armstrong's Foundry, 6 Wall., 769; Morris's Cotton, 8 Wall., 507. It is not to be claimed that trial by jury is necessarily implied in the phrase “due course of law,” or “due process of law.” Within the meaning of the constitution, there may be due process of law in proceedings in chancery, in the general system of proceedure for the levy and collection of taxes; and, under the constitution of 1802, the value of private property taken for public uses could rightfully be assessed by commissioners. Kelly v. Pittsburg, 104 U. S., 78; Willyard v. Hamilton, 7 Ohio, 2 pt., 111. But, upon reason and the weight of authority, we are of opinion, that in the case at bar the plaintiff in error was entitled to a jury in the probate court; that to deprive the turnpike company of the right to demand and receive toll for the use of its road without a trial by jury, would be to take its property without due course or process of law; and that sections 4914, 4916 and 4918, of the Revised Statutes, under which the defendants in error instituted proceedings to have the company’s road declax ed abandoned and vacated, so far as they contain no provision for a jury trial, or an appeal whereby such trial may be had, are in conflict with sections 5 and 16, article I of the constitution of Ohio, and *582 section 1, article XIV of the amendments of the constitution of the United States.
But while the right to demand and receive toll cannot be extinguished without a finding by jury trial that the turnpike has been so out of repair within the statutory meaning as properly to be deemed and held abandoned, it is urged that in addition to the franchise to collect toll, the plaintiff in error also owns the road, its bridges and culverts, the very gravel on the road, etc.; and it is claimed in the record, though not in the brief of counsel, that to declare the turnpike a free road, and subject its other property to the free use of the public without the consent or reimbursement of the company, would be to take private property for public use without first making compensation therefor in money, and hence in violation of section 19 of article I of the constitution. When it is found expedient to convert a toll-road into a free road, a mode is prescribed by statute whereby county commissioners may purchase the toll-road at a price not exceeding the statutory appraisal, and pay the company in money or in bonds to be issued as specified in the statutes. Section 3498« Revised Statutes, et seq. It becomes therefore a question for consideration, how far, if the franchise to collect toll maybe extinguished after a jury trial, the other property of the turnpike company maj'' be subjected to the free use of the traveling public without compensation therefor to the owners. But that question, with the insufficiency of facts disclosed in the record, we cannot satisfactorily consider in the case at bar.
With the views herein expressed, we are of opinion that the judgments of the circuit court, court of common pleas and probate court should be reversed, and the petition in the probate court dismissed for want of jurisdiction in that court.

Judgment accordingly.

Wirrrams, J., dissents.
Spear, J., dubitante.