ATLANTIC RICHFIELD COMPANY, Exxon Corporation, and Shell Western E & P, Inc., Petitioners,

v.

DISTRICT COURT, MONTROSE COUNTY, State of Colorado, and the Honorable Richard Jay Brown, Acting District Judge, Respondents.

No. 89SA423.

Supreme Court of Colorado, En Banc.

July 9, 1990.

Holland & Hart, Perry L. Glantz, Robert M. Pomeroy, Jr., Denver, for Atlantic Richfield Co. and Exxon Corp.

Jones, Meiklejohn, Kehl & Lyons, Edward T. Lyons, Jr., Denver, for Shell Western E & P, Inc.

John R. McNeill, James H. Delman, Montrose, for respondents.

Jack P. Wolfe, Longmont, for Twelve Member Cooperatives.

Carol A. Curran, Montrose, for Southeast Colorado Power Ass'n.

Chief Justice ROVIRA delivered the Opinion of the Court.

Pursuant to C.A.R. 21, the Atlantic Richfield Company, Exxon Corporation, and Shell Western E & P, Inc. (oil companies), petitioned this court for a writ of mandamus either ordering the trial court to take further action on the issue of refunds or ordering the trial court to remand the case to the Public Utilities Commission (PUC) for determination of the refund issue arising out of our decision in *Colorado–Ute Electric Association, Inc. v. Public Utilities Commission,* 760 P.2d 627 (Colo.1988), *appeal dismissed,* — U.S. ——, 109 S.Ct. 1333, 103 L.Ed.2d 804 (1989). The oil companies also requested this court to vacate the trial court's contingent summary judgment in favor of thirteen member cooperatives who intervened in the case. We issued a rule to show cause why the trial court should not conduct further proceedings on the issue of restitution, or in the alternative, to remand the case to the PUC for determination of the refund issue. We now make the rule absolute, and order the trial court to remand the case to the PUC for determination of whether the oil companies are entitled to refunds, and, if so, the amounts that may be due and the method of payment. We also order the trial court to vacate the summary judgment in favor of the thirteen member cooperatives.

I

A brief review of the history of this case is necessary to understand the current controversy. Colorado–Ute generates and transmits electrical power on a wholesale basis to fourteen member cooperatives, who in turn market the electrical power on a retail basis to electrical consumers. In December 1981, Colorado–Ute requested an increase in rates from the PUC. The PUC initiated Case No. 6076 for the purpose of investigating the reasonableness of the tariffs filed by Colorado–Ute. A number of parties intervened and participated in the proceeding, including the member cooperatives, and certain customers of the cooperatives, including the oil companies. After presentation of evidence by Colorado–Ute

and the member cooperatives, the PUC approved the revenue increase. However, it disapproved Colorado–Ute's use of a "flat rate" and ordered Colorado–Ute to file a "seasonally differentiated demand energy rate." The PUC also allocated over $24 million of generation fixed costs (demand costs) to the energy component of the demand-energy rate.

Colorado–Ute and the member cooperatives sought judicial review of the PUC's decisions in the Montrose County District Court. The oil companies sought judicial review of that portion of the PUC's decisions which allegedly had misclassified certain demand costs as energy costs.

Colorado–Ute and the member cooperatives moved the trial court for a stay or suspension of the PUC's decisions on the ground that they would suffer irreparable injury if the decisions were implemented. The trial court suspended the PUC decisions, finding that failure to stay the decisions would "result in serious financial uncertainties and impact" to the member cooperatives. The court ordered Colorado–Ute to file a suspending bond of $500,000 pursuant to section 40–6–116, 17 C.R.S. (1984).

The trial court then reviewed the merits of the PUC decisions. The court set aside that part of the PUC's determination which required Colorado–Ute to file rates based on a seasonally differentiated demand-energy rate design. Further, the trial court set aside the PUC's allocation of $24 million of demand costs to energy costs, and held that if the supreme court were to find lawful the PUC's imposition of the seasonally differentiated demand-energy rate, the commission would be directed to allocate demand-energy costs in accord with a study contained in one of the exhibits.

On appeal to this court, the PUC urged reversal of the district court's order in its entirety. Colorado–Ute and the member cooperatives requested that we dismiss the appeal on the ground of mootness, or, in the alternative, affirm the district court's order. The oil companies requested that the district court's order setting aside the seasonally differentiated demand-energy rate be reversed, but that the district court's order concerning the allocation of charges be affirmed. The oil companies also requested an order from this court directing the payment of refunds to customers who might have overpaid under the flat rate scheme during the time that the PUC's order requiring a demand-energy rate was under suspension pursuant to the trial court order.

In *Colorado–Ute Electric Association, Inc. v. Public Utilities Commission,* 760 P.2d 627 (Colo.1988), *appeal dismissed,* —— U.S. ——, 109 S.Ct. 1333, 103 L.Ed.2d 804 (1989), we held that (1) the appeals were not moot; (2) the district court's rejection of the PUC's findings on rate design constituted an impermissible intrusion into the PUC's ratemaking process; and (3) the district court's order setting aside that portion of the PUC's order which classified over $24 million of demand costs as energy costs should be affirmed. Concerning the issue of refunds, we declined to decide whether the oil companies were entitled to such reimbursement, but held that their claim was sufficient to avoid an allegation of mootness. At the close of our opinion, we remanded the case "for further proceedings consistent with this opinion."

After remand, the PUC complied with the district court's order in which the PUC was directed to allocate demand-energy costs in accordance with the study contained in one of the exhibits. On August 22, 1988, the oil companies moved the trial court for an order dissolving its suspension of the PUC decisions and requested a hearing to determine the damages or refunds to which they were entitled as a result of the suspension. Thirteen of the member cooperatives also submitted a motion for summary judgment in which the trial court was requested to rule that the cooperatives had no liability for damages.

By order dated August 24, 1989, the trial court held that it was without jurisdiction to determine liability and damages as requested, and indicated that the PUC was the appropriate body to perform this function. The court also declined to exercise any equitable jurisdiction that it may have

had. Further, the court held that there was no evidence of any illegal actions by Colorado–Ute, thus no liability could be imposed for damages under section 40–7–102, 17 C.R.S. (1984). Finally, the court held that in the event it was reversed on the jurisdictional issue, the summary judgment motion of the thirteen member cooperatives would be granted because there was no basis upon which the court could find liability to the oil companies by any of the cooperative members. The oil companies filed motions to alter or amend, requesting that the trial court determine the issue of refunds itself or, in the alternative, remand the case to the PUC for determination of the refund issue. Subsequently, the trial court issued an amended order which denied the oil companies' motion for damages on the ground that it had no jurisdiction to act in that matter. The court's order further stated that if its determination that it was without jurisdiction were reversed, then the case would be remanded to the PUC for further proceedings.

The oil companies then petitioned this court for a writ of mandamus to enforce compliance with our mandate. On March 29, 1990, we issued an order finding that the district court was "vested with jurisdiction to determine the issue of refunds or to remand the case to the Public Utilities Commission for determination of this issue." The cause was remanded to the district court with directions to order the PUC to conduct a hearing, including the taking of evidence if necessary, on the issue of whether the oil companies were entitled to refunds, and, if so, the amounts that may be due and the method of payment.[1]

In compliance with our order, the district court remanded the case to the PUC for a hearing on the refund issue. Shortly thereafter, the member cooperatives informed the PUC of their belief that they were no longer parties to the refund proceeding because the district court's contingent summary judgment came into existence when this court found that the trial court was vested with jurisdiction. The oil companies then filed a Joint Motion for Clarification or Amendment of Order Making Rule to Show Cause Absolute, requesting this court to clarify whether the summary judgment in favor of the member cooperatives was vacated and whether they remain as parties to the refund proceedings. The issue has been fully briefed by both the oil companies and the member cooperatives. We now withdraw and vacate our order of March 29, 1990, and issue this opinion in its stead.[2]

## II

■ The oil companies contend that the trial court erred in finding that it lacked jurisdiction to determine the issue of refunds. We agree.

The district court first held that it was without jurisdiction to determine the refund issue because its authority to review PUC decisions was limited by section 40–6–115, 17 C.R.S. (1984). Because that section prohibits the district court from taking new or additional evidence, and because the statute provides that "review shall not extend further than to determine whether the commission has regularly pursued its authority, . . . and whether the decision of the commission is just and reasonable and whether its conclusions are in accordance with the evidence," the court held that it lacked authority to consider the oil companies' motion for post-appeal relief.

While it is true that the district court's review of decisions by the PUC is limited, such limitation does not deprive the court of jurisdiction to rectify the result of its own action. But for the district court's

---

1. On March 30, 1990, Colorado–Ute filed a voluntary petition of bankruptcy. The bankruptcy court has subsequently issued an order exempting this particular refund proceeding from the provisions of the automatic stay.

2. Although the oil companies' petition for writ of mandamus raised both the issue of the trial court's jurisdiction to determine refunds and the propriety of the contingent summary judgment, we addressed only the trial court's jurisdiction in our order. Because the summary judgment issue was fully briefed in the oil companies' motion for clarification and the member cooperatives' response thereto, we elect to address the merits of the issue.

order suspending the PUC decisions, the oil companies might have been entitled to pay for their power at a lower rate throughout the proceedings on appeal. Thus, the court has jurisdiction to determine whether and to what extent the oil companies are owed a refund of those amounts which were exacted during the period of suspension. This jurisdiction stems from the court's exercise of its equitable powers in staying the PUC decisions pending appeal, from our remand of the cause to the trial court for further proceedings consistent with the opinion, and from specific statutory authority.

## A

The United States Supreme Court has developed a line of cases on the subject of a trial court's equitable jurisdiction which we find helpful. In *Northwestern Fuel Co. v. Brock,* 139 U.S. 216, 11 S.Ct. 523, 35 L.Ed. 151 (1891), the Court considered the jurisdiction of a trial court to order restitution in a case where the trial court did not have initial jurisdiction to act. The Court held:

> [T]he power is inherent in every court, whilst the subject of controversy is in its custody, and the parties are before it, to undo what it had no authority to do originally, and in which it, therefore, acted erroneously, and to restore, as far as possible, the parties to their former position. Jurisdiction to correct what has been wrongfully done must remain with the court so long as the parties and the case are properly before it, either in the first instance or when remanded to it by an appellate tribunal.

*Id.* at 219, 11 S.Ct. at 524.

The Court next decided *Arkadelphia Milling Co. v. St. Louis Southwestern Ry.,* 249 U.S. 134, 39 S.Ct. 237, 63 L.Ed. 517 (1919), which is similar to the instant case. In *Arkadelphia,* the Arkansas State Railroad Commission adopted a tariff of freight rates which were challenged in the district court. The district court stayed the new rates upon the condition that the railroads execute bonds and keep an account of those amounts charged in excess of the

tariff rates. The district court subsequently found the tariff rates unreasonable, entered permanent injunctions against enforcement of the tariff, and ordered that the bonds be released and the sureties be discharged from liability.

The Supreme Court reversed the lower court's decision, remanding with the following language: "You, therefore, are hereby commanded that such execution and further proceedings be had in said cause, in conformity with the opinion and decree of this Court, as according to right and justice, and the laws of the United States, ought to be had, this said appeal notwithstanding." The trial court then issued a decree distributing the funds. On review, the Court held that the mandate's provision authorizing further proceedings removed any question of the district court's jurisdiction to determine the liability of the railway companies upon the bonds.

The Court held further that the district court had jurisdiction to set aside so much of its final decree as released the railway companies and their sureties from liability under the injunction bonds. Assessment of liability on the bonds was proper because the shippers were entitled to the benefit of the lower rates at all times despite the temporary stay of the commission's rates. The Court reiterated the principle "long established and of general application, that a party against whom an erroneous judgment or decree has been carried into effect is entitled, in the event of a reversal, to be restored by his adversary to that which he has lost thereby." *Id.* at 145, 39 S.Ct. at 242.

In *Ex parte Lincoln Gas & Electric Light Co.,* 256 U.S. 512, 41 S.Ct. 558, 65 L.Ed. 1066 (1921), the Court again examined the trial court's jurisdiction to determine restitution on a bond which was given when gas rates were suspended during litigation. The Court's mandate ordered "that such proceedings be had in said cause, as according to right and justice, and the laws of the United States, ought to be had, the said appeal notwithstanding." The Court held that "[t]o retain jurisdiction for the purpose of requiring that restitu-

tion be made according to the terms of the bond was and is a necessary part of the duty ... under the mandate." *Id.* at 517, 41 S.Ct. at 560. Finally, in *Inland Steel Co. v. United States*, 306 U.S. 153, 59 S.Ct. 415, 83 L.Ed. 557 (1939), the Court held that not only did the trial court have the power to order restitution when Interstate Commerce Commission orders were stayed, but that the court had a duty as well.

As can be seen from this line of cases, exercise of the power to suspend public utility rates pending appeal necessarily creates the power and the duty to order restitution if the suspended rates are upheld on appeal.

We have also held that a lower tribunal was empowered to order restitution to a party who paid a higher freight rate pending appeal, when the higher rate was subsequently invalidated. In *Denver & S.L. R.R. v. Chicago, B. & O. R.R.*, 67 Colo. 155, 162, 185 P. 817, 820 (1919), we said that "the law is unquestioned that a party procuring a reversal of an erroneous judgment is entitled to restitution," citing the United States Supreme Court's determination of jurisdiction in *Northwestern Fuel Co. v. Brock*, with approval. Further, in *Cline v. Heron*, 106 Colo. 308, 104 P.2d 462 (1940), we held that the court which takes a bond is the court which is vested with jurisdiction to assess and order damages when it is necessary to do so.

Here, the trial court declined to exercise equitable jurisdiction on the grounds that it did not know how to do so in light of this court's disapproval of the allocation of $24 million of demand costs to the energy component of the rate. Further, the court pointed to the PUC's expertise in these matters as a reason for declining jurisdiction. However, the trial court was not precluded from referring the matter to the PUC for determination before entering a final order of restitution. *See, e.g., United States v. Morgan*, 307 U.S. 183, 59 S.Ct. 795, 83 L.Ed. 1211 (1939) (trial court's duty to dispose of excess charges required it to retain fund until agency reopened rate case and determined appropriate rate, trial court

was then under duty to distribute funds according to agency's findings).

## B

■ The trial court also held that it was without jurisdiction to remand the cause to the PUC so that the agency could make a determination on the issue of refunds. We disagree.

The statutory scheme which provides for the suspension of a PUC decision pending appeal vests the district court with jurisdiction to remand the cause to the PUC for determination of the issue of refunds. Section 40–6–116, 17 C.R.S. (1984), sets out the procedure to be followed in suspending the operation of a PUC decision, stating:

> [D]uring the pendency of such writ, the district court, in its discretion, may stay or suspend, in whole or in part, the operation of the commission's decision.
>
> ....
>
> (3) In case the decision of the commission is stayed or suspended, the order of the court shall not become effective until a suspending bond has been filed with and approved by the district court, and sufficient in amount and security to insure the prompt payment, by the party petitioning for the review, of all damages caused by the delay in the enforcement of the decision of the commission, and of all moneys which any person may be compelled to pay, pending the review proceedings, for transportation, transmission, product, commodity, or service in excess of the charges fixed by the decision of the commission in case said decision is sustained. The district court, in case it stays or suspends the decision of the commission in any matter affecting rates, fares, tolls, rentals, charges, or classifications, by order, shall direct the public utility affected to pay into court from time to time, there to be impounded until the final decision of the case, or into some bank or trust company under such conditions as the court may prescribe all sums of money which it may collect from any person in excess of the sum such person would have been compelled to pay

if the decision of the commission had not been stayed or suspended.

. . . .

(5) Upon the final decision by the district court, all moneys which the public utility may have collected, pending the appeal, in excess of those authorized by such final decision, together with interest, in case the court ordered the deposits of such moneys in a bank or trust company, shall be promptly paid to the persons entitled thereto, *in such manner and through such methods of distribution as may be prescribed by the commission. . . .*

(Emphasis added.) This statute clearly contemplates cooperation between the district court and the PUC in refunding amounts charged in excess of the rates finally approved on appeal. Implicit in this statutory scheme is the authority to remand the case to the PUC so that the agency can prescribe the manner and method of distribution of those amounts charged in excess of the final rates.

Further, our opinion in *Colorado–Ute* made it clear that whether the oil companies were entitled to refunds remained as an outstanding issue. Although we declined to address the merits of the claim, our remand for further proceedings encompassed the determination of this issue. Thus, if the trial court believed the PUC to be the more appropriate body to determine the issue of refunds, our mandate empowered it to remand the case to that agency for such determination. The trial court's failure to take any further action left an outstanding issue undecided and prevented final resolution of the case.

We hold that the district court erred in concluding that it lacked jurisdiction either to determine the refund issue itself or to remand the case to the PUC for such a determination. Because it is clear that the trial court would prefer to rely on the expertise of the PUC in this matter, and because section 40–6–116(5), 17 C.R.S. (1984), directs that the PUC determine the manner and method of distribution of excess amounts charged, we remand this cause to the district court with directions that it be further remanded to the PUC for determination of the refund issue.

III

◼ The oil companies contend that the trial court erred in dismissing the member cooperatives from the refund proceeding. We agree that the trial court erred in granting the member cooperatives' motion for summary judgment.

In granting the summary judgment, the trial court held:

This Court is unaware, nor has it been cited, any decision or order of the Public Utilities Commission, dealing with the cooperative members comprising Colorado–Ute. All orders, directives and decisions of the PUC have dealt with Colorado–Ute—not the members. In light of the Public Utilities Commission statutes and the limited authority of the District Court in reviewing orders and decisions of the PUC, there is no authority nor basis upon which this Court could find liability and order damages or refunds to the oil companies by any of the Co-op members. There is no genuine issue of fact and no basis in law for imposing liability upon the Cooperative Members simply because they were intervenors in this case advocating a position.

Here, however, the record is clear that the cooperative members played a more significant role in this litigation than that found by the trial court. When Colorado–Ute first requested the rate increase, the member cooperatives intervened in support of that position. They participated fully in every aspect of the litigation, from the initial proceedings at the PUC and the petition to review the PUC's orders in the district court through the final appeal to the United States Supreme Court.

Some of the member cooperatives presented evidence before the PUC in favor of the rate increase. More significantly, all the member cooperatives joined Colorado–Ute in seeking judicial review of the PUC decisions, and in requesting that the PUC's decisions be suspended on the ground that they would suffer irreparable harm if the new rate design went into effect. Further,

the PUC's decisions were suspended by the trial court on the specific finding that the member cooperatives would otherwise suffer irreparable harm. Thus, the member cooperatives requested and received the benefit of the suspension which is now the subject of the refund proceeding. On this basis, it is clear that the member cooperatives were truly parties to this case, as compared to mere intervenors advocating a position.

Further, although the PUC's orders were not specifically directed at the member cooperatives, the cooperatives were inextricably involved in the decisions. The rate design ordered by the PUC required that the cooperatives modify their rate structures, billing and metering, which would then affect their customers, such as the oil companies. Because the oil companies are customers of the cooperatives, and pay the cooperatives for any power provided, it follows that the oil companies can look to the member cooperatives for refunds if they have been overcharged.

The member cooperatives contend that the issue of refunds is strictly between Colorado–Ute and the oil companies, as the ultimate customers. In support of this contention, they rely on *Citizens Utilities Co. v. City of La Junta*, 121 Colo. 261, 215 P.2d 332 (1950).

In *Citizens*, the Colorado Interstate Gas Company (Interstate) was ordered to reduce its wholesale rates for natural gas. Interstate obtained a stay of the reduction in rates, pending appeal, and deposited with the court those amounts collected in excess of the new rates. After the new rates were approved on appeal, the Citizens Utilities Company (intervenor), who bought wholesale gas from Interstate and retailed such gas to the ultimate customers, intervened and requested that it be refunded those amounts that it paid in excess of the new rates. The intervenor's claim was decided against it in the related case of *Federal Power Commission v. Interstate Natural Gas Co.*, 336 U.S. 577, 69 S.Ct. 775, 93 L.Ed. 895 (1949). This court, quoting from that case, reiterated that the ultimate customers were the sole owners of the fund, and then stated that because the intervenor's schedule of rates was approved by

the PUC and there was no deviation from those rates:

no valid claim against the intervenor could be made for such period by the [ultimate customers] for reparations or damages, and likewise no valid claim could be made by intervenor against Colorado Interstate Gas Company for overcharges. It is simply a situation where the Interstate Company collected from the ultimate customers of the intervenor excessive charges, using the intervenor as a catspaw therefor.

*Citizens*, 121 Colo. at 267, 215 P.2d at 335.

We first note that because the quoted language was not necessary to resolve the case, it constitutes dictum. Moreover, there are several important distinctions between *Citizens* and the instant case. In *Citizens*, the PUC ordered a flat reduction in rates, which equally affected all intermediaries between Interstate and the ultimate customers. Here, unlike modification of a flat rate, the institution of a seasonally adjusted demand rate affects the individual member cooperatives unevenly. Some of the cooperatives will incur increased costs, whereas others will experience a decrease in expenses. Thus, this is not a situation in which an improper rate was simply passed through the member cooperatives to the ultimate customers.

Further, the intervenor in *Citizens* was not a cooperative member of the wholesaler, as here, and it does not appear that it played as active a role in obtaining the suspension as did the member cooperatives in our case. Finally, there was already an overcharge fund established in *Citizens*, whereas no such fund exists in this case. Based on these distinctions, *Citizens* does not control the outcome here.

The member cooperatives contend that because the validity of the summary judgment was raised in the oil companies' petition for writ of mandamus, but was not referred to in the rule to show cause, this court has manifested its approval of the summary judgment in favor of the member cooperatives. However, our decision not to issue a rule to show cause on a particular issue has no substantive significance, and does not indicate either approval or disap-

proval of the trial court ruling which is the subject of the original proceeding. *People v. McGraine*, 679 P.2d 1084 (Colo.1984).

The cooperatives also contend that the oil companies' motion was not timely. They argue that this motion is essentially a petition for rehearing, which must be filed within fourteen days after entry of judgment. Thus, they request that the motion be dismissed. However, there is no specific rule which limits the time in which a motion for clarification may be filed. Because this motion was filed within fourteen days after the member cooperatives took the position that the summary judgment was still viable, we decline to dismiss the oil companies' motion as untimely.

Because the member cooperatives requested and received a suspension of the PUC's orders, which permitted them to exact a potentially excessive rate from the oil companies, we hold that the trial court erred in finding no basis upon which the cooperatives could be liable for refunds.

Accordingly, we now make the rule absolute, and order the trial court to vacate its summary judgment and to remand the case to the PUC for determination of whether the oil companies are entitled to refunds from Colorado–Ute and the member cooperatives, and, if so, the amounts that may be due and the method of payment.