MORRIS'S COTTON.

1. Where a seizure of property on land is made under the acts of July 13th, 1861, or of August 6th, 1861, or July 17th, 1862, passed in suppression of the rebellion, the claimants are entitled to trial by jury, though the suit be in form a libel of information; and the suit can be removed into this court by writ of error alone. *Union Insurance Company v. United States* (6 Wallace, 765), and *Armstrong's Foundry* (Ib. 769), affirmed.

2. This court will, however, assume jurisdiction on appeal for the purpose of reversing a decree rendered by an inferior court not having jurisdiction to proceed in the way in which it has proceeded, and of vacating any unwarranted proceedings of it which stand in the way of a new trial there in a case where, in the judgment of this court, a new trial ought to be granted. And it will in such cases either reverse the judgment or decree, and direct the proceedings to be dismissed, or remand the cause, with directions to allow the pleadings to be amended, and to grant a new trial, according to law. And if the subject in controversy be a fund lately in the registry of the court, but which has been distributed, so that a new trial would be useless unless the fund was restored to the registry where it was before the decree of distribution was exe-

---

* Theriat *v.* Hart, 2 Hill, 381, note.
† United States *v.* Babbit, 1 Black, 61.

cuted, it will direct that a writ of restitution issue to the proper parties to restore the fund to the registry.

APPEAL from the District Court for the Middle District of Alabama.

Three acts of Congress, one of July 13th, 1861, another of August 6th, 1861, and a third of July 17th, 1862, passed during the late rebellion, authorized the seizure and confiscation in the District or Circuit Courts of property used for insurrectionary purposes, and to a certain extent prescribed the mode of proceeding.

Under one of these acts it was decided, in the *Union Insurance Company* v. *United States* and in *Armstrong's Foundry*,* that while proceedings for the condemnation of property or land might be shaped in the form and modes analogous to those used in admiralty, yet that issues of fact must, on the demand of either party, be tried by jury; and that while, where a proceeding under that act to enforce the forfeiture of real estate had been carried on in conformity with the practice of courts of admiralty, this court would take jurisdiction of the decree on appeal, yet that it would do so only for the purpose of reversing the decree and directing a new trial, with proceedings conformed in respect to trial by jury and exceptions to evidence to the course of proceeding by information on the common law side of the court in cases of seizure upon lands.

The three acts above mentioned being in force, and in an action purporting to be in conformity to them, the United States filed an information *in rem* against certain cotton (Morris claimant) alleged to have been seized on land and forfeited to the United States under the statutes above referred to. The information was tried in the District Court as a suit in admiralty. The claimant prayed for a jury; but his prayer was denied. A decree of forfeiture having passed against the cotton, the case was brought by the claimant before this court from the District Court by *appeal*, and not by writ of error.

---

* 6 Wallace, 759 and 766.

Statement of details in the opinion.

*Mr. P. Phillips, for the appellant* (a brief of Mr. Chilton being filed), relying on certain testimony not given in the preceding statement to show that the seizure (if indeed any had been made, a fact which he denied) was wholly void, contended, on the authority of *Morris & Johnson v. United States,** that a valid and subsisting seizure, at the time of filing the information, was indispensable to give this court jurisdiction; and further, on the authority of the two cases mentioned above, in the statement of the case, that the refusal of a trial by jury was erroneous. He inferred accordingly that, as in the case of *Morris & Johnson v. United States,* this court would dismiss the proceeding and order restitution.

*Mr. Hoar, Attorney-General, and Mr. Field, Assistant Attorney-General, contra,* contended that no question of merits arose; and that if this court could do anything more than dismiss the appeal, it could only order the decree to be reversed as irregular, the pleadings reformed, and a new trial had according to the course of the common law; that this was what was in fact decided in the *Union Insurance Company v. United States,* and in the case of *Armstrong's Foundry,* exactly like which the present case plainly was; that it could not now be known what the issues would be when the pleadings were reformed; that *Morris & Johnson v. United States,†* relied on to show that the proceeding should be dismissed and the property restored, differed from this one; that *it* was a suit of a species not authorized by the statutes, and not a suit in which a cause of action was defectively set forth, or one in which the trial was irregular and not according to law.

Mr. Justice CLIFFORD gave the details of the case, and delivered the opinion of the court.

Forfeiture of the property seized in this case is claimed in the libel of information, as amended, upon several distinct grounds, of which the following are the most material:

---

* 7 Wallace, 578.                                  † Ib.

1. Because the owner purchased the cotton of an inhabitant of a State or district in insurrection, as lawfully declared by the President in his proclamation to that effect, and in violation of the provision which prohibited "all commercial intercourse between such States or districts" so long as such hostilities should continue.*

2. Because the property was owned by a person who knowingly used or employed, or consented to the use or employment of the same, in aiding, abetting, or promoting said insurrection and resistance to the laws.†

3. Because the owner of the property, being engaged in armed rebellion against the United States, or in aiding or abetting such rebellion, at the time when the President issued his proclamation upon the subject, did not, within sixty days thereafter, cease to aid, countenance, and abet such rebellion, and return to his allegiance.‡

Process of monition issued, and the marshal, on the eleventh of May, 1866, seized one hundred and fifty-four bales of cotton, as appears by his return. Appearance was entered by the claimant on the ninth of June following, as the agent of the bank, and he alleges in behalf of the bank that none of the material allegations of the libel of information are true. On the contrary, he alleges that the cotton was purchased by the bank, and was held by their agent as their property until the same was attached by a creditor of the bank, and that the bank had ample authority to transport the funds with which the cotton was purchased into that district, and he utterly denies that the purchase was made in violation of any act of Congress, or of any commercial regulations of the United States. Many other defences are set up in the answer, but in the view taken of the case, it is not important to enter further into those details.

Testimony was taken in the case, and, on the twentieth of December, 1866, a decree was entered in the District Court that the cotton seized be forfeited to the United States for the value thereof, estimated at $25,069.70, together with

---

* 12 Stat. at Large, 257.      † Ib. 319.      ‡ Ib. 591.

costs, against the stipulators and claimants.    Dissatisfied with the decree, the claimants appealed to this court.

By the findings of the court it appears—(1.) That the cotton was grown on a plantation in the State of Alabama, and that it was purchased by the agent of the Bank of Louisiana during the period when both of those States were in rebellion against the United States.    (2.) That the agent of the bank, in going from Louisiana to Alabama, passed through our military lines; and that he purchased the cotton in the latter State for the bank, and with the funds which he transported through our military lines.    (3.) That neither the agent nor the bank had any license or permit from the President to trade or hold any commercial intercourse in that State or district, and that his acts in trading for, and making the purchase of, the cotton were contrary to the act of Congress prohibiting all such trade and commercial intercourse.

None of these matters, however, can be re-examined in this court, as the District Court had no jurisdiction of the cause in admiralty to render any decree upon the merits. Where the seizure is made on navigable waters, within the ninth section of the Judiciary Act, the case belongs to the instance side of the District Court; but where the seizure was made on land, the suit, though in the form of a libel of information, is an action at common law, and the claimants are entitled to trial by jury.*

Seizures, when made on waters which are navigable from the sea by vessels of ten or more tons burden, are exclusively cognizable in the District Courts, subject to appeal, as provided by law; but all seizures on land or on waters not navigable, and all suits instituted to recover penalties and forfeitures incurred, except for seizures on navigable waters, must be prosecuted as other common-law suits, and can only be removed into this court by writ of error.†

Want of jurisdiction in the court below, however, does not prevent this court from assuming jurisdiction on appeal

---

* Confiscation Cases, 7 Wallace, 462; Armstrong's Foundry, 6 Id. 769.

† Insurance Co. v. United States, 6 Wallace, 765; United States v. Hart, Ib. 772.

for the purpose of reversing the decree rendered by that court, and of vacating any unwarranted proceedings of that court, which necessarily stand in the way of a new trial there, in a case where, in the judgment of this court, a new trial ought to be granted. Where the court below has no jurisdiction of the case, in any form of proceeding, the course of this court is to direct the cause to be dismissed, if the judgment or decree was for the defendant or claimant, but if the judgment or decree was for the plaintiff or libellant, the court here will reverse the judgment or decree, and remand the cause, with directions to the court below to dismiss the proceeding.

Unless the practice were as explained, great injustice would be done in all cases where the judgment or decree was in favor of the party who instituted the suit, as he would obtain the full benefit of a judgment or decree, rendered by a court in his favor, which had no jurisdiction to hear and determine the controversy. Hence, this court will, in all such cases, reverse the judgment or decree, and direct the proceedings to be dismissed, or remand the cause, with directions to allow the pleadings to be amended, and to grant a new trial, according to law. But the fund in this case, having been distributed, a new trial would be useless, unless the fund is restored to the registry of the court, where it was deposited before the decree of distribution was executed. Although the District Court has no jurisdiction in such a case, still, this court has full jurisdiction on appeal to reverse the action of that court, and to dismiss the proceedings; or, in a case where a new trial is required, to remand the cause, and give directions to that effect, and also, to direct that a writ of restitution issue to the proper parties, to cause the fund to be restored to the registry of the court, from which it was erroneously withdrawn.

DECREE REVERSED, and the cause remanded, with directions to allow the pleadings to be amended, and to grant a new trial, and issue a writ of restitution,

IN CONFORMITY TO THE OPINION OF THE COURT.