# NORTHWESTERN FUEL COMPANY *v.* BROCK.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF IOWA.

No. 1159. Submitted March 2, 1891. — Decided March 16, 1891.

The judgment in this case was reversed in this court for want of jurisdiction in the Circuit Court, 130 U. S. 341. The reversal was accompanied by an order that the defendants recover their costs in this court; and have execution therefor, and the cause was remanded to the Circuit Court for further proceedings. Upon filing the mandate in the Circuit Court, the defendants moved that they have judgment against the plaintiff for their costs in this court, and for the costs of the transcript from the Circuit Court, and that execution issue therefor. The defendants, alleging in their motion that certain sums had been collected on the judgment, also moved for a summary inquiry as to the amount, and that they have judgment for the same, with interest; and they having proved that there was collected by the plaintiff upon the judgment, by supplementary proceedings in aid of the execution thereon, the sum of $629.23, the court rendered judgment that the defendants recover that sum with interest and costs, and that the action be dismissed for want of jurisdiction as to the subject matter of the suit. *Held,* That the Circuit Court had jurisdiction to correct by its own order that which, according to the judgment of this court, it had no authority to do in the first instance, and that the judgment should be affirmed.

THE case, as stated by the court, was as follows:

The Northwestern Fuel Company, a corporation of Minnesota, brought an action in the Circuit Court of the United States for the Northern District of Iowa, against the defendants, citizens of that State, to recover the sum of $1309.50, claimed upon a contract made in July, 1881, between them and the What Cheer Land and Coal Company, alleged to be doing business in that State, and by that company assigned to the plaintiff. Judgment was recovered upon it for $1402.47, and the defendants brought the case on a writ of error to this court, where it was reversed upon the ground that the record did not show affirmatively that an action could have been brought upon it in the federal court if no assignment had been

made; the act of 1875 declaring that no Circuit or District Court should "have cognizance of any suit founded on contract in favor of an assignee, unless a suit might have been prosecuted in such court to recover thereon if no assignment had been made, except in cases of promissory notes negotiable by the law merchant and bills of exchange." 18 Stat. 470; *Brock* v. *Northwestern Fuel Co.*, 130 U. S. 341.

The reversal was accompanied by an order that the defendants recover their costs in this court, and have execution therefor, and the cause was remanded to the Circuit Court for further proceedings.

Upon filing the mandate in the Circuit Court, the defendants moved that they have judgment against the plaintiff for their costs in this court, and for the costs of the transcript from the Circuit Court, and that execution issue therefor. The defendants, alleging in their motion that certain sums had been collected on the judgment, also moved for a summary inquiry as to the amount, and that they have judgment for the same, with interest; and further, that the suit be dismissed with costs, unless the plaintiff should forthwith, by amendment, show a cause of action of which the court had jurisdiction. The court ordered that the defendants have execution against the plaintiff for the costs mentioned; and afterwards gave the plaintiff leave on or before September 1, 1889, to file amendments to the petition as to the jurisdiction of the court. It also gave judgment for the amount paid for the transcript of the record for this court.

The plaintiff failed to amend its petition, within the time designated, showing jurisdiction in the court, and the defendants moved that the action be dismissed; and they having proved that there was collected by the plaintiff upon the judgment, by supplementary proceedings in aid of the execution thereon, the sum of $639.23, the court rendered judgment as follows:

"Now, this 4th day of December, A.D. 1889, this cause again coming before the court, upon the motion by defendants for a judgment in restitution for money collected by the plaintiff on the original judgment herein, which original judgment was

reversed by the Supreme Court, as it appears from its mandate as filed herein, and plaintiff appearing by Messrs. Henderson, Hurd, Daniels & Kiesel, its attorneys, and the defendants appearing by Charles A. Clark, their attorney, and the plaintiff having failed to amend its pleadings so as to show jurisdicion of this court as to the subject matter of the action, and the court finding that the plaintiff has collected from the defendants on the original judgment herein in favor of plaintiff and against defendants the sum of six hundred twenty-nine and 23-100 dollars on the first day of May, 1884, which said sum, with interest thereon at six per centum per annum from said date, the defendants are entitled to recover back from plaintiff, because said original judgment herein has been and is reversed and set aside:

" It is therefore ordered and adjudged by the court, that the defendants, R. G. Brock and T. G. McKenzie, do have and recover of and from the plaintiff, the Northwestern Fuel Company, the sum of eight hundred and forty dollars, ($840,) with interest thereon at six per cent per annum until paid, together with the costs of this action, taxed at $22.70, with judgment for said costs against C. W. Eaton, surety on the cost bond filed herein, and that said plaintiff pay said sums into this court within twenty (20) days, in default of which payment defendants shall have execution therefor.   To all of which the plaintiff at the time excepted.

" And it is further ordered that this action be now dismissed for want of jurisdiction as to the subject matter of this suit."

To reverse this judgment the case is brought to this court on writ of error, under the act of Congress of February 25, 1889.   25 Stat. 236, p. 693.

*Mr. David B. Henderson* and *Mr. Francis B. Daniels* for plaintiff in error.

*Mr. Charles A. Clark* for defendants in error.

MR. JUSTICE FIELD, after stating the case, delivered the opinion of the court.

The alleged error of the court below is, that it had no juris-
diction to render judgment for restitution of the money col-
lected on the reversed judgment. This is put forth in different
forms, but in no way variant in substance. The gist of the
whole complaint is that the reversal by this court being for
want of jurisdiction in the Circuit Court — such jurisdiction
not affirmatively appearing — that court had no authority to
act further in the matter than as directed by the mandate;
and that that went only to the reversal of its judgment and
the collection of the costs incurred in the appellate court.

This position is supposed to be supported by those decisions
which hold that when a case is dismissed for want of jurisdic-
tion in the Circuit Court to entertain the action, or render the
judgment entered, the power of that court to award costs is
gone. *Mayor* v. *Cooper*, 6 Wall. 247, 250; *Hornthall* v. *The
Collector*, 9 Wall. 560, 566; *Mansfield Railroad Co.* v. *Swan*,
111 U. S. 379, 387.

But here the jurisdiction exercised by the court below was
only to correct by its own order, that which, according to the
judgment of its appellate court, it had no authority to do in
the first instance; and the power is inherent in every court,
whilst the subject of controversy is in its custody, and the
parties are before it, to undo what it had no authority to do
originally, and in which it, therefore, acted erroneously, and
to restore, as far as possible, the parties to their former posi-
tion. Jurisdiction to correct what had been wrongfully done
must remain with the court so long as the parties and the case
are properly before it, either in the first instance or when
remanded to it by an appellate tribunal.

The right of restitution of what one has lost by the enforce-
ment of a judgment subsequently reversed has been recognized
in the law of England from a very early period, and the only
question of discussion there has been as to the proceedings to
enforce the restitution. Thus in *Anonymous*, 2 Salkeld, 588,
it was held by Holt, C. J., that "where the plaintiff has exe-
cution, and the money is levied and paid, and that judgment
is afterwards reversed, there, because it appears on the record
that the money is paid, the party shall have restitution with-

out a *scire facias*, and there is a certainty of what was lost; otherwise where it was levied but not paid; there must then be a *scire facias* suggesting the matter of fact, viz. the sum levied, etc."

The same doctrine has been fully recognized by this court in *Bank of the United States* v. *Bank of Washington*, 6 Pet. 8, 17. In that case the court, after observing that the party against whom an erroneous judgment has been enforced does not lose his remedy against the party to the judgment, said: "On the reversal of the judgment the law raises an obligation in the party to the record, who has received the benefit of the erroneous judgment, to make restitution to the other party for what he has lost; and the mode of proceeding to effect this object must be regulated according to circumstances. Sometimes it is done by a writ of restitution, without a *scire facias*, when the record shows the money has been paid, and there is a certainty as to what has been lost. In other cases a *scire facias* may be necessary to ascertain what is to be restored. 2 Salk. 587–8; Tidd's Pract. 936, 1137–8. And, no doubt, circumstances may exist where an action may be sustained to recover back the money." We are of opinion that the proceeding to enforce the restitution in the cases mentioned is under the control of the court, and that all needed inquiry can be had to guide its judgment in a summary proceeding, upon motion of the parties, the only requisite being that the opposite party shall be heard, so that in directing restitution no further wrong be committed. The restitution is not made to depend at all upon the question whether or not the court rendering the judgment reversed acted within or without its jurisdiction.

In the case of *Morris' Cotton*, 8 Wall. 507, property on land was seized under the acts of 1861 and 1862, passed for suppression of the rebellion, according to which the claimants were entitled to a trial by jury. Such trial was not allowed, but a decree forfeiting the property was passed by the court below. This was reversed by this court, which held that the District Court had no jurisdiction to proceed in the case in the manner in which it did; and, although the proceeds of the

sale of the property had been distributed, it directed, in its decree of reversal, that the court below should grant a new trial and issue a writ for restitution of the proceeds to the registry of the court.

In *Ex parte Morris*, 9 Wall. 605, 607, the United States filed an information in the District Court for the Middle District of Alabama, against certain bales of cotton, which it was alleged were liable to seizure and confiscation, and had come into the possession of the petitioners. The court entered a personal decree against them for the value of the cotton. On appeal this court reversed the judgment and remanded the cause to the District Court with directions " to cause restitution to be made to the appellants of whatever they have been compelled to pay under that decree."

The same doctrine is sustained in the several state courts of the country, all recognizing the power of a court, whose judgment is set aside on its own motion or reversed by order of an appellate tribunal, to direct restitution, so far as practicable, of all property and rights which have been lost by the erroneous judgment. *Hiler* v. *Hiler*, 35 Ohio St. 645, 646; *Chamberlain* v. *Choles*, 35 N. Y. 477, 479.

*Judgment affirmed.*

BREWER, J. (BROWN, J., concurring):

I had supposed the law to be otherwise, and that if the Circuit Court did not have jurisdiction by reason of a lack of proper citizenship of the parties to render a judgment in favor of the plaintiff against the defendant, it was equally without jurisdiction thereafter in the same case and without any change in the citizenship to render a judgment in favor of the defendant against the plaintiff. But the result is so manifestly equitable I am glad to know that I was mistaken, and that the law is as it is now adjudged to be.