GERALD M. MOORE AND SON, INC., Plaintiff,

v.

**DREWRY AND ASSOCIATES, INC., and Joseph S. Drewry, Jr., Defendants.**

Action No. 2:93cv1118.

United States District Court, E.D. Virginia, Norfolk Division.

Oct. 22, 1996.

John Stephen Wilson, John Dinshaw McIntyre, Willcox & Savage, P.C., and Walter Dekalb Kelley, Jr., Willcox & Savage, Norfolk, VA, for Gerald M. Moore and Sons, Inc.

Brian Nelson Casey, Taylor & Walker, P.C., Norfolk, VA, for Drewry and Associates, Inc. and Joseph S. Drewry.

### OPINION AND ORDER

MILLER, United States Magistrate Judge.

This matter comes before the Court on defendant Joseph S. Drewry, Jr.'s motion for an order of restitution. All parties have consented to have all proceedings in this case conducted before a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73.

### I. FACTUAL AND PROCEDURAL BACKGROUND

In the original action between these parties, plaintiff Gerald M. Moore & Son, Inc. ("Moore") filed a complaint against Joseph S. Drewry, Jr. ("Drewry") and his professional corporation, Drewry & Associates, Inc. ("D &

A"), for economic damages resulting from negligent performance of a contract. Moore owns and operates an industrial plant in Nassawadox, Virginia. In 1990, Moore entered into a contract with the engineering firm of D & A to engineer, design, and furnish a reduction furnace for Moore's use in the process of thermal remediation of petroleum contaminated soil. The contract was signed by Drewry as President of D & A. Drewry performed all the engineering work required by the contract.

The reduction furnace provided by D & A did not function properly because of design and engineering defects. Subsequently, Moore filed suit against D & A alleging breach of contract, breach of warranties and negligence. By amended complaint, Drewry was added as a defendant in the negligence count.

This Court held D & A liable for breach of contract and both defendants liable for negligence. Moore was awarded damages of $107,182.70 plus costs, based entirely on its economic loss. Both defendants were held jointly and severally liable for the judgment amount.

Drewry appealed this Court's decision to the United States Court of Appeals for the Fourth Circuit. D & A did not appeal. The Court of Appeals certified the following question to the Supreme Court of Virginia: whether Drewry, as president of D & A and the engineer who performed the work called for, was liable for purely economic losses resulting from the negligent performance of the contract.

The Supreme Court of Virginia recognized that under Virginia law, an agent can be held liable for negligent performance of a contract to which he is not a party, but to which his principal is a party. *Gerald M. Moore & Son, Inc. v. Drewry and Drewry & Assoc., Inc.,* 251 Va. 277, 467 S.E.2d 811, 813 (1996). However, as Drewry was not a party to the contract between Moore and D & A there was no privity between Moore and Drewry. *Id.* The court found "even if the agent's negligence is established, absent privity of contract, Virginia's economic loss doctrine precludes the recovery of damages based on economic loss alone." *Id.* Thus, the court held that in the absence of privity, a person cannot be held liable for economic loss damages caused by his negligent performance of a contract. *Id.*

After the Supreme Court of Virginia answered the certified question in the negative, the Fourth Circuit reversed the opinion of this Court holding Drewry individually liable under the economic loss doctrine and issued its mandate on May 15, 1996. *Gerald M. Moore & Son, Inc. v. Drewry and Drewry & Assoc., Inc.,* 81 F.3d 514 (4th Cir.1996).

As Drewry did not post a supersedeas bond to prevent collection of the judgment, Moore executed upon the judgment from this Court while the appeal to the Fourth Circuit was pending and collected $75,339.93 [1] from Drewry toward satisfaction of the judgment. Drewry now moves this Court to enter an order of restitution of the monies erroneously paid.

Moore opposes Drewry's motion for an order of restitution on the ground that Drewry is attempting to "circumvent the mandatory procedure of filing a complaint" and "obtain a judgment in disguise." (Pl.'s Opp.Br. at 1, 6.) Moore argues that if Drewry's motion is granted the order would give Drewry the benefits of having a judgment entered in his favor without complying with the Federal Rules of Civil Procedure. (Pl.'s Opp.Br. at 1, 2.) It is Moore's position that this Court may not award the affirmative relief requested without Drewry's initiating an entirely new action. (Pl.'s Opp.Br. at 2.) Moore argues that if district courts were to have the power to order the refund of monies collected during the pendency of appeal, the drafters of the Federal Rules of Civil Procedure would have outlined such a procedure. (Pl.'s Opp.Br. at 4.)

---

1. The exact amount of the judgment paid was not known by Drewry at the time he filed his motion for an order of restitution. In his supporting memorandum he simply stated that he had paid "approximately $80,000" toward satisfaction of the judgment. (Def.'s Supp.Br. at 1, Drewry Aff. at 1.) On September 19, 1996, this Court ordered Moore to file an Accounting of Monies Received with the Court and ordered Drewry to file any objections to this accounting. Moore's accounting, to which Drewry concurs, indicates that $75,339.83 has been collected on the judgment.

Moore has filed a separate suit in equity in state court attempting to "pierce the corporate veil" of D & A and thereby hold Drewry liable for the debts of his personal corporation. (Pl.'s Opp.Br., Exh. 1.) Moore argues that if Drewry's motion for an order of restitution is granted by this Court, the outcome of those state court proceedings will be compromised. (Pl.'s Opp.Br. at 4.) Moore contends that Drewry should file a separate suit for restitution so that Moore's state claim may be asserted as a compulsory counterclaim and all related issues will be settled by this Court in a unified fashion. (Pl.'s Opp. Br. at 4.) In short, it appears that Moore is claiming that it has a "defense" to Drewry's right to restitution by virtue of this pending suit in equity.

Moore further argues that while this Court initially had jurisdiction over the parties in this suit, this Court lost that jurisdiction upon Drewry's appeal to the Fourth Circuit. (Pl.'s Opp.Br. at 5.) When the Fourth Circuit reversed the judgment against Drewry, it did not remand the case to this Court for further proceedings. The mandate simply stated "reversed." Accordingly, Moore contends that this Court no longer has jurisdiction to enter the order sought by Drewry. (Pl.'s Opp.Br. at 5.)

Drewry urges this Court to enter an order of restitution requiring Moore to restore the monies collected from Drewry while the appeal was pending. Drewry contends that if, pending an appeal, the appellant has paid the judgment that is being appealed, appellant, upon reversal of the judgment, is entitled to restitution of the money paid. (Def.'s Supp. Br. at 1.) Drewry argues that this Court has the authority to order Moore to restore to Drewry the monies collected in execution of the reversed judgment without Drewry's initiating a new cause of action.

After a review of the memoranda submitted by the parties, and the applicable case law, the Court concludes that defendant Drewry's motion for an order of restitution should be GRANTED.

## II. *ANALYSIS*

■ A person who has conferred a benefit upon another in compliance with a judgment is entitled to restitution if the judgment is reversed or set aside, unless restitution would be inequitable or the parties contract that payment is to be final. Restatement (First) of Restitution § 74 (1996).

■ The power to make restitution lies within the inherent equitable jurisdiction of the Court. In *Arkadelphia Milling Co. v. St. Louis Southwestern Ry. Co.*, 249 U.S. 134, 145–46, 39 S.Ct. 237, 242, 63 L.Ed. 517 (1919), the Supreme Court held a claim for restitution is allowable upon:

the principle, long established and of general application, that a party against whom an erroneous judgment or decree has been carried into effect is entitled, in the event of a reversal, to be restored by his adversary to that which he has lost thereby. This right, so well founded in equity, has been recognized in the practice of the courts of common law from an early period. Where plaintiff had judgment and execution and defendant afterwards sued out a writ of error, it was regularly a part of a judgment of reversal that the plaintiff in error 'be restored to all things which he hath lost by occasion of the said judgment'; and thereupon, in a plain case, a writ of restitution issued at once, but if a question of fact was in doubt, a writ of scire facias was first issued. The doctrine has been mostly fully recognized in the decisions of this court.

That a course of action so clearly consistent with the principles of equity is one proper to be adopted in an equitable proceeding goes without saying. It is one of the equitable powers, inherent in every court of justice so long as it retains control of the subject matter and of the parties, to correct that which has been wrongfully done by virtue of its process.

*See also Northwestern Fuel Co. v. Brock,* 139 U.S. 216, 219, 11 S.Ct. 523, 524, 35 L.Ed. 151 (1891) (power to order restitution is "one of the equitable powers, inherent in every court of justice so long as it retains control of the subject matter and of the parties, to correct that which has been wrongfully done by virtue of its process"); *Johnson v. Alexandria Scrap Corp.,* 445 F.Supp. 1171, 1173 (D.Md. 1977) ("a federal district court has jurisdic-

tion in the same case or in a subsequent case to correct its own errors").

■ Later, in *Porter v. Warner Holding Co.*, 328 U.S. 395, 402, 66 S.Ct. 1086, 1091, 90 L.Ed. 1332 (1946), the Supreme Court reiterated that restitution is "within the recognized power and within the highest tradition of a court of equity." The Court held that "[p]ower is thereby resident in the District Court, in exercising [its equitable] jurisdiction, to do equity and to mould each decree to the necessities of the particular case." *Id.* at 398, 66 S.Ct. at 1089. The court may act so as to adjust and reconcile competing claims and to accord full justice to all parties in interest. *Id.* In addition, the court may decide whatever other issues and give whatever other relief may be necessary under the circumstances. *Id.* "Only in that way can equity do complete rather than truncated justice." *Id.*

> The Court continued, stating that the comprehensiveness of this equitable jurisdiction is not to be denied or limited in the absence of a clear and valid legislative command. Unless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied. The great principles of equity, securing complete justice, should not be yielded to light inferences, or doubtful construction.

*Id.*

■ Having established (1) that upon reversal of the original judgment Moore came under an obligation to make restitution to Drewry for monies erroneously paid on that judgment and (2) that this Court possesses the inherent equitable power to correct its own mistake, there are various methods which can be used for securing such restitution. The reversing tribunal can itself direct restitution or the tribunal which is reversed can on motion or upon its own initiative direct that restitution be made. Restatement (First) of Restitution § 74 cmt. a. Where money has been paid, a court issuing such judgment nevertheless has power to remedy the consequences of its error and to order restitution. *Id.* at cmt. b. This is true although the payor could have ob-

tained a supersedeas or stay of execution. *Id.*

■ Moore has cited no cases which hold that after reversal of a judgment, a party must file a new complaint in order to obtain restitution of what he has lost by execution of the reversed judgment. Nor has Moore directed this Court to any authority for the proposition that this Court lacks jurisdiction to enter such an order for restitution at this stage of the proceedings. Although this Court recognizes that these specific questions have not been addressed by the Fourth Circuit, the Ninth Circuit in *Caldwell v. Puget Sound Elec. Apprenticeship and Training Trust*, 824 F.2d 765 (9th Cir.1987), addressed each of these very narrow issues.

In *Caldwell*, a Title VII action, two female applicants challenged the discriminatory admission practices of an apprenticeship program operated by the defendants. *Id.* at 766. The district court entered judgment for the plaintiffs and awarded back pay, attorneys' fees and front pay. The parties stipulated to a supersedeas arrangement to stay the award of back pay and attorneys' fees pending appeal. *Id.*

On appeal, the Ninth Circuit reversed the district court's decision. However, its mandate did not authorize or order refunding the front pay, nor did the court remand the case for further proceedings. As in the case at bar, the disposition simply read "reversed" and nothing more. After the district court complied with the order of the appellate court and entered judgment for the defendants, the defendants moved for restitution. The district court granted the motion and the plaintiffs appealed. *Id.*

The Ninth Circuit affirmed the district court's decision to grant the motion for restitution. Recognizing that "the right to recover what one has lost by the enforcement of a judgment subsequently reversed is well established," the court found that a court has jurisdiction to enforce restitution as long as the subject of the controversy and the parties are before the court. *Id.* at 767. Well-established principles of restitution permit a court, after being reversed, to order restitution. *Id.*

In *Caldwell*, the court found that the subject of the controversy and the parties were

properly before the district court because the mandate of the court of appeals, once issued, returns to the district court. *Id. (citing In re Thorp,* 655 F.2d 997, 998 (9th Cir.1981) (Once a notice of appeal is filed, "[t]he district court is divested of authority to proceed further, ... until the mandate has been issued by the court of appeals."))

■ Having held that the district court had jurisdiction to consider defendants' motion for restitution, the court determined that granting that motion properly lay within the mandate issued by the court of appeals. *Id.* As in the present case, the plaintiffs in *Caldwell* contended that the opinion's silence about restitution means that restitution goes beyond the scope of the mandate. *Id.* However, "this contention misunderstands the equitable nature of restitution." *Id.* Upon return of its mandate, the district court cannot give relief beyond the scope of that mandate, but it may act on "matters left open by the mandate." *Id. (quoting In re Sanford Fork & Tool Co.,* 160 U.S. 247, 256, 16 S.Ct. 291, 293, 40 L.Ed. 414 (1895)). Restitution, therefore, need only be consistent with the mandate, not specifically mentioned in the opinion. *Id.; see Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); *see also Capital Transit Co. v. Public Utilities Comm. of District of Columbia,* 213 F.2d 176, 196 (D.C.Cir.1954) (Stephens, J., concurring) ("while reviewing courts have power to direct that restitution be made, they rarely exercise that power; the duty of taking and authorizing such steps as may be necessary to the enforcement of rights of restitution is usually confided to the trial court whose judgment is reversed"), *cert. denied,* 348 U.S. 816, 75 S.Ct. 25, 99 L.Ed. 643.

Thus, finding that the traditional equitable powers of the court include the ordering of restitution when a decision is subsequently reversed and adopting the reasoning of the Ninth Circuit in the *Caldwell* case, this Court finds that it has jurisdiction to order restitution from Moore. Further, this Court finds that requiring Moore to refund the monies erroneously paid by Drewry is entirely consistent with the mandate from the Fourth Circuit as it simply returns the parties to the status quo ante.

■ Moreover, this Court finds that Moore, as judgment creditor, is chargeable with interest on the sum received from the time of its receipt. This is the general rule. Restatement (First) of Restitution § 74 cmt. d; *see B & O Ry. v. U.S.,* 279 U.S. 781, 49 S.Ct. 492, 73 L.Ed. 954 (1929). Moreover, the Second Circuit in *Globe Indemnity Co. v. Puget Sound Co.,* 154 F.2d 249, 250 (2d Cir. 1946), found that the allowance of interest in a similar case was not discretionary. This Court finds the reasoning in that decision persuasive. Due to the erroneous judgment of June 10, 1994, Moore has had the use of this money since it was received. Had no judgment been entered against Drewry individually, he would have had the use of this sum during this time. It is just, therefore, that Drewry collect interest from the time the funds were actually received by Moore in satisfaction of the prior judgment.

It appears from the Accounting of Monies Received that various sums of money were collected from Drewry on ten different dates between March 1, 1995 to January 24, 1996. The following chart indicates the appropriate post-judgment rate of interest for each of these dates [2]:

| DATE | AMOUNT COLLECTED | POST–JUDGMENT RATE OF INTEREST |
| --- | --- | --- |
| March 1, 1995 | $22,978.03 | 7.03% |
| April 26, 1995 | $12,456.06 | 6.41% |
| June 16, 1995 | $    454.45 | 5.88% |
| July 5, 1995 | $  6,353.69 | 5.53% |

2. Table of Post–Judgment Interest Rates, Administrative Office of the United States Courts Mem. (August 1, 1996).

| DATE | AMOUNT COLLECTED | POST–JUDGMENT RATE OF INTEREST |
|------|------------------|-------------------------------|
| September 14, 1995 | $14,169.58 | 5.52% |
| October 6, 1995 | $ 4,003.62 | 5.52% |
| November 11, 1995 | $ 224.21 | 5.62% |
| December 5, 1995 | $ 224.21 | 5.45% |
| January 19, 1996 | $ 224.21 | 5.16% |
| January 24, 1996 | $14,251.77 | 5.16% |

This Court finds that Drewry is entitled to restitution of the above sums (totalling $75,-339.83) plus interest at the applicable post-judgment rate of interest from the dates these monies were received by Moore.

### III.  *CONCLUSION*

For the foregoing reasons, the Court GRANTS defendant Joseph S. Drewry, Jr.'s motion for an order of restitution and OR-DERS the plaintiff, Gerald M. Moore & Son, Inc., to pay to the defendant the above sums plus interest at the applicable post-judgment rate of interest from the dates these monies were received.