ANDERSON, Circuit Judge,
concurring:
Believing as I do that the opinion for the court with respect to unbridled discretion applies not only to accepting or rejecting a potential publisher’s request to rent a news rack and the cancellation thereof, but also to the determination of the amount of *1313 the rent charged, I concur in and join the opinion.
I also note that in determining the amount of the rent, a rental charge based on the same formula applied to the rental of space for other purposes in the airport would constitute a generally applicable rent, and virtually foreclose a First Amendment challenge based upon the amount of the rent. See Minneapolis Star & Tribune Co. v. Minnesota Commissioner of Revenue, 460 U.S. 575, 103 S.Ct. 1365, 75 L.Ed.2d 295 (1983). My understanding of the challenged rental charge in this case is that it is substantially similar in amount as that charged for rental space for other purposes. Although the opinion for the court notes that the instant rent is not calculated on the basis of the same mathematical formula, it nevertheless is substantially similar, and is “not an aberration within this scheme of vendor regulation.” Opinion of the court at 1310. Moreover, the opinion for the court examines extensively the reasonableness of the amount of the instant rent and concludes that it is in fact reasonable, and does not appear to be “applying monopolistic muscle to the publishers.” Opinion at 1309.
I acknowledge some reluctance with respect to placing undue reliance upon the distinction between a proprietorship capacity and a governmental function. In different contexts, the Supreme Court has rejected the proprietary versus governmental function distinction. See Garcia v. San Antonio Metropolitan Transit Authority, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985) (in the context of the immunity of a state from federal regulation pursuant to the Interstate Commerce Clause); New York v. United States, 326 U.S. 572, 66 S.Ct. 310, 90 L.Ed. 326 (1946) (in the context of state immunity from federal taxation). However, the Supreme Court itself in Murdock v. Commonwealth of Pennsylvania, 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292 (1943), relied upon the distinction as to “whether a particular activity is religious or purely commercial” id. at 110, 63 S.Ct. at 874. Of course, the Murdock line of cases is the source of the concept that a state may not impose a charge for the enjoyment of a right granted by the federal constitution where the fee is not calculated to defray the expense of administering the regulatory scheme. Because Murdock itself suggests that the rule might be otherwise in the context of licensing a commercial activity, I believe that the distinction is appropriate here. Moreover, common sense suggests that the Department should be able to charge a reasonable rent for the exclusive use of limited space in the airport, a rent substantially similar to that charged for the rental of other space. Finally, the possibility of suppression or censorship which concerned the Court in Murdock is significantly diluted here because the instant rental charge is considerably more indirect with respect to its impact upon speech, as compared to the fees charged in Murdock for the privilege of canvassing.
CARNES, Circuit Judge,
concurring, in which DUBINA, Circuit Judge, joins:
I concur in all that the Court has said in this case, including the understatement in the last sentence of its opinion that on remand “the district court should not be precluded from considering the City’s claim, if any, for lost revenues from enjoined fees that we have determined were constitutionally permissible.” That is an understatement because the City lost substantial revenue during the six years it was wrongfully prevented from collecting constitutionally permissible fees from these publisher plaintiffs, and it has a legally and equitably compelling claim for recovery of those fees from the plaintiffs.
*1314 At the urging of these plaintiffs and on their behalf, the district court enjoined the City from adopting an airport newsrack plan that required publishers to pay a fee exceeding the City’s cost of administering the plan. Eleven of eleven judges on this Court who participated in this case have now determined that part of the injunction should never have been entered. As a result of that part of the injunction, for years the City has not been permitted to collect a fee that this Court has unanimously determined is reasonable and constitutionally permissible. We have concluded that the City should never have been prevented from collecting that fee from these plaintiffs.
The question on remand will be what to do about the revenue the City should have been permitted to collect from these plaintiffs over the years of this litigation, and would have collected but for the erroneous part of the injunction the plaintiffs procured. The answer is clear. The Supreme Court has recognized and made a part of federal law “the principle, long established and of general application, that a party against whom an erroneous judgment or decree has been carried into effect is entitled, in the event of a reversal, to be restored by his adversary to that which he has lost thereby.” Arkadelphia Milling Co. v. St. Louis S.W. Ry. Co., 249 U.S. 134, 145, 39 S.Ct. 237, 242, 63 L.Ed. 517 (1919); accord N.W. Fuel Co. v. Brock, 139 U.S. 216, 221, 11 S.Ct. 523, 525, 35 L.Ed. 151 (1891) (“The same doctrine is sustained in the several state courts of the country, all recognizing the power of a court, whose judgment is set aside on its own motion or reversed by order of an appellate tribunal, to direct restitution, so far as practicable, of all property and rights which have been lost by the erroneous judgment.”); Texaco P.R., Inc. v. Dep’t of Consumer Affairs, 60 F.3d 867, 873 (1st Cir.1995) (referring to the rule quoted from Arkadelphia as a “hoary adage”); Md. Dep’t of Human Res. v. United States Dep’t of Agric., 976 F.2d 1462, 1482-83 (4th Cir.1992) (recognizing and applying the rule on behalf of the government).
The principle that a party ought to be required to pay back to another that which it wrongly obtained or wrongly failed to pay through the device of an erroneous court judgment is not a radical notion. Instead, as the Supreme Court has observed, “[i]t is a typical case for the application of the principle of restitution.” Arkadelphia, 249 U.S. at 146, 39 S.Ct. at 242. Typical or not, the application of the principle in this case is one with which Judge Barkett disagrees. Her position is mistaken because it conflates separate parts of the injunction and disregards the different effects of our judgment on them.
In her concurring opinion, Judge Bark-ett says that “the City can have no entitlement to fees it might have collected during the pendency of this litigation because it has never formulated a licensing scheme that would suitably constrain airport officials’ discretion.” An essential premise of that syllogism is demonstrably wrong. The premise is that without a licensing scheme which constrains official discretion, the City could not charge any fee for use of its property at the airport. Of course it could. The fee is charged for commercial use of property — valuable space at the airport — not for suitable constraints on official discretion.
Look at it this way. There is nothing in the Constitution to prevent the City from throwing open its airport for the use of any publishers who wish to put newsracks there and charging them a reasonable fee for as much of the airport property as they choose to use. Likewise, once the district court enjoined the City, in effect, to open its property to these publishers, nothing in the Constitution prevented the City from charging a fee that we have determined is *1315 reasonable and constitutionally permissible. Indeed, that is the bottom line of our decision.[1]
We have left intact the part of the injunction preventing the City from exercising unbridled discretion in deciding which publishers can lease space for newsracks at the airport, but we have vacated that part of the injunction prohibiting the City from collecting the reasonable fee for use of that space, which it would have been collecting all along had the plaintiffs not convinced the district court erroneously to exempt them from it. Our decision is that excluding publishers from the commercial use of airport space based upon the exercise of unbridled discretion is not permitted; collecting a reasonable fee from whoever uses airport property, regardless of whether there is a valid scheme in place for limiting the use of that property, is permitted.
These plaintiff publishers have for years used space at the airport for commercial purposes without paying the constitutionally permissible fee that the City attempted to collect from them. Everyone else who has used space at the airport commercially has paid for it. So should they, the Court has concluded today, because the constitutional right to publish does not include a privilege to occupy the property of another at no cost. That is what these publishers have been doing — getting something for nothing. They have had their hand in the City’s pocket for six years, and now they owe restitution.
On remand, the district court has no choice about this aspect of the case. It cannot reinstate the part of the injunction we vacated. It cannot prevent the City from collecting the fees that we have determined are reasonable and constitutionally permissible. It cannot pretend that the City was not entitled to collect those fees from the plaintiffs during the entire period this case has been in litigation. It cannot fail to recognize the City’s right to restitution from the plaintiffs for the loss caused by the part of the injunction that is now vacated.
This is not a complicated matter. For six years these publisher plaintiffs and the multi-billion dollar corporate conglomerates of which they are a part have been getting a free ride on the public’s back. It is time for them to pay up. They owe the City an amount equal to the total of all the fees that the City would have collected over the years but for the wrongful part of *1316 the injunction they persuaded the district court to enter. Plus interest. See Baltimore & O.R. Co. v. United States, 279 U.S. 781, 786, 49 S.Ct. 492, 493, 73 L.Ed. 954 (1929); Arkadelphia, 249 U.S. at 147, 39 S.Ct. at 242. In the days of the Arkadelp-hia decision, it was too much to expect that in similar circumstances the barons of big business who ran the railroads would pay what they owed without a court order. One would hope that these particular plaintiffs, powerful publishers whose papers preach principles of public duty and civic virtue, might recognize their own legal, equitable, and civic duty in this instance. If not — and statements of USA Today’s attorney at oral argument indicate not — the district court must force them to pay up, just as courts forced the robber barons of old to pay what they owed.

. The argument Judge Barkett makes in the footnote of her opinion is at war with the en banc Court’s decision which she has joined. Her polite theory cannot survive the rude fact that we all have agreed the district court should never have entered the injunction preventing the City from collecting the fee. That is why we have vacated that part of the injunction. Any other aspects of the plan that are unconstitutional could have been and still may be enjoined, but the fee collection cannot be and never should have been enjoined. That is the holding of the en banc Court, and it brings this case on remand within the controlling authority of Arkadelphia and related decisions cited in this opinion. It is noteworthy that the only decision Judge Barkett’s opinion cites, Lakewood v. Plain Dealer Publishing Co., 486 U.S. 750, 755-56, 108 S.Ct. 2138, 2142-43, 100 L.Ed.2d 771 (1988), has nothing to do with the collection of nondiscriminatory fees or with restitution for damages suffered from a wrongful injunction.
The view expressed in Judge Barkett's opinion is that businesses which make money by selling newspapers are entitled to better treatment than those that sell food and drink. In some contexts and circumstances perhaps, but not when it comes to paying for lease space. The First Amendment does not entitle publishers to a discount on the price of lease space for their newsracks anymore than it entitles them to a discount on the price of electricity used to run their presses. When publishers go into the marketplace as commercial enterprises seeking to make a profit, they must pay the ordinary and usual costs of doing business, just as any other businesses must.