15-2366-cv
*Chesapeake Energy Corp. v. Bank of New York MellonTrust Co., N.A.*

# In the
# United States Court of Appeals
## for the Second Circuit

AUGUST TERM 2015

No. 15-2366-cv

CHESAPEAKE ENERGY CORPORATION,
*Plaintiff-Appellant,*

v.

BANK OF NEW YORK MELLON TRUST COMPANY, N.A.,
*Defendant-Appellee.*

On Appeal from the United States District Court
for the Southern District of New York

ARGUED: JUNE 13, 2016
DECIDED: SEPTEMBER 15, 2016

Before: CABRANES, LOHIER, and CARNEY, *Circuit Judges.*

On appeal from a July 17, 2015 judgment of the United States District Court for the Southern District of New York (Paul A. Engelmayer, *Judge*), awarding damages to Noteholders represented by defendant-appellee Bank of New York Mellon Trust Company, N.A., as the Indenture Trustee, in the amount of $438,717,561.67. The District Court's damages award represented the difference between the "At-Par Price" paid to the Noteholders by plaintiff-appellant Chesapeake Energy Corporation for its early redemption of Notes in May 2013 and the "Make-Whole Price" it should have paid for that redemption consistent with the Supplemental Indenture, plus prejudgment interest.

Plaintiff principally contends on appeal that the District Court erred by awarding the Noteholders damages in the amount of the difference between the "At-Par Price" and the "Make-Whole Price." Plaintiff insists that the only reason it exercised its early-redemption right was because it had relied on the District Court's declaratory ruling that the price of its redemption would be "At Par"—a ruling that this Court later reversed on appeal after the redemption was complete. Plaintiff therefore argues that, on remand, the District Court should have awarded restitution to the Noteholders, rather than the higher quantum of contract-based damages predicated on the "Make-Whole Price."

We disagree. Substantially for the reasons set forth in the District Court's thorough July 10, 2015 opinion, we **AFFIRM** the judgment of the District Court.

2

PAUL M. SMITH, Jenner & Block LLP,
Washington, DC (Richard F. Ziegler,
Stephen L. Ascher, Elizabeth A.
Edmondson, Jenner & Block LLP, New
York, NY, *on the brief*), *for Plaintiff-Appellant*.

ROY T. ENGLERT, JR. (Mark T. Stancil, Jeremy
C. Baron, Danielle B. Rosenthal, *on the brief*),
Robbins, Russell, Englert, Orseck,
Untereiner & Sauber LLP, Washington, DC,
*for Defendant-Appellee.*

PER CURIAM:

The principal question presented is whether the District Court correctly determined the measure of compensation due to Noteholders, represented by defendant-appellee Bank of New York Mellon Trust Company, N.A. ("BNY Mellon"), arising from the underpayment to the Noteholders by plaintiff-appellant Chesapeake Energy Corporation ("Chesapeake") in connection with Chesapeake's early redemption of the Notes on May 13, 2013. *See Chesapeake Energy Corp. v. Bank of N.Y. Mellon Tr. Co.* (*Chesapeake III*), No. 13 Civ. 1582 (PAE), 2015 WL 4191419 (S.D.N.Y. July 10, 2015). We conclude that it did.

Accordingly, substantially for the reasons set forth in the District Court's thorough July 10, 2015 opinion, we **AFFIRM** the judgment of the District Court.

## BACKGROUND

At the outset, we note that a thorough account of the facts and procedural history of the case—which are entwined—can be found in the past opinions by our Court and the District Court in this case. *See Chesapeake Energy Corp. v. Bank of N.Y. Mellon Tr. Co.* (*Chesapeake II*), 773 F.3d 110 (2d Cir. 2014); *Chesapeake Energy Corp. v. Bank of N.Y. Mellon Tr. Co.* (*Chesapeake I*), 957 F. Supp. 2d 316 (S.D.N.Y. 2013), *rev'd*, *Chesapeake II*, 773 F.3d at 112; *see also Chesapeake III*, 2015 WL 4191419. We therefore assume the readers' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal. Nevertheless, we pause to briefly recount the key facts and procedural history necessary to explain our decision to affirm.

In February 2012, Chesapeake, a publicly traded oil-and-natural-gas producer, issued $1.3 billion in senior notes due March 15, 2019, bearing an interest rate of 6.775 percent (the "Notes"). The Notes were governed by a Base Indenture as well as a Supplemental Indenture, the latter of which is especially relevant to this appeal. Indeed, the Supplemental Indenture established two types of early redemption rights, exercisable at Chesapeake's option, that have been central to this case.

Section 1.7(b) of the Supplemental Indenture provided in pertinent part that

4

At any time from and including November 15, 2012 to and including March 15, 2013 (the "Special Early Redemption Period"), . . . [Chesapeake], at its option, may redeem the Notes . . . for a price equal to 100% of the principal amount . . . plus accrued and unpaid interest on the Notes to be redeemed to the date of redemption [the "At-Par Price"] . . . . [Chesapeake] shall be permitted to exercise its option . . . so long as it gives the notice of redemption pursuant to Section 3.04 of the Base Indenture during the Special Early Redemption Period.

J.A. 567.[1] In turn, Section 3.04 of the Base Indenture required that Chesapeake give the notice of redemption at least 30 days but not more than 60 days before the date of redemption. J.A. 656.

Separately, Section 1.7(c) of the Supplemental Indenture provided in pertinent part that "[a]t any time after March 15, 2013 to the Maturity Date, [Chesapeake], at its option, may redeem the Notes . . . for an amount equal to the Make-Whole Price plus accrued and unpaid interest to the date of redemption . . . ." J.A. 567. The Make-Whole Price was defined to mean the sum of the present value of the principal of the Notes and remaining interest payments. J.A. 574.

On February 20, 2013, Chesapeake announced that it planned to exercise its right of redemption pursuant to Section 1.7(b) of the

---

[1] "J.A." refers to the Joint Appendix.

Supplemental Indenture—for the At-Par Price. BNY Mellon notified Chesapeake, however, that, in its view, the notice deadline for a redemption under Section 1.7(b) had already passed. In the view of BNY Mellon, Chesapeake was required to give at least 30 days' notice before March 15, 2013 to redeem "At Par" under Section 1.7(b). BNY Mellon further warned Chesapeake that it might, as indenture trustee, treat a prospective redemption as requiring payment of the Make-Whole Price under Section 1.7(c), due to the redemption's tardiness under Section 1.7(b). On March 8, 2013, Chesapeake filed an action against BNY Mellon in the District Court seeking a declaratory judgment on two counts: that (1) its Notice of Redemption attached to its complaint would be timely under Section 1.7(b) to redeem "At Par" if mailed by March 15, 2013, and would be effective on May 13, 2013; and (2) in the event that the Notice is determined not to be timely, or if the District Court has not ruled by the May 13 redemption date, the Notice shall be deemed null and void (rather than deemed to trigger redemption at the Make-Whole Price). Chesapeake issued its Notice of Redemption on March 15, 2013.

On May 8, 2013, following a bench trial, the District Court ruled that the Notice of Redemption was timely under Section 1.7(b), and the District Court therefore entered judgment in favor of Chesapeake on its first count. *See Chesapeake I*, 957 F. Supp. 2d at 374. As a result of that decision, the District Court ruled that Chesapeake's second count was moot. *Id.* BNY Mellon filed a notice of appeal on May 11, 2013. Two days later, on May 13, 2013, Chesapeake proceeded with its early redemption, paying the

Noteholders approximately $1.3 billion pursuant to Section 1.7(b) of the Supplemental Indenture. The completion of this redemption, however, did not conclude this litigation.

On November 25, 2014, this Court reversed the District Court's May 8, 2013 judgment in favor of Chesapeake on its first count, holding that Chesapeake's Notice of Redemption was untimely to effect an "At Par" redemption under Section 1.7(b) of the Supplemental Indenture. *See Chesapeake II*, 773 F.3d at 117. We remanded the cause to the District Court for consideration of Chesapeake's second count, however, which had requested a declaratory judgment that Chesapeake had not noticed a redemption at the Make-Whole Price. *See id.*

The subject of the instant appeal is the District Court's July 10, 2015 decision on remand from this Court. First, the District Court determined that the second count of Chesapeake's complaint remained moot insofar as it sought nullification only of Chesapeake's *notice* of redemption, but had no bearing on the redemption itself, which had already been completed.[2] *See Chesapeake III*, 2015 WL 4191419, at *5–6. Second, the District Court, after receiving briefing from the parties, awarded the Noteholders contract-based damages in the amount of the difference between the At-Par Price that Chesapeake had already paid to the Noteholders for the redemption and the Make-Whole Price that Chesapeake should have paid, equal

---

[2] Chesapeake does not challenge this ruling on appeal.

to $379,650,133.21, plus prejudgment interest, for a total of $438,717,561.67. *Id.* at \*18.[3] The District Court entered judgment on July 13, 2015, and entered an amended judgment on July 17, 2015. This appeal followed.

## DISCUSSION

On appeal, Chesapeake principally contends that the District Court erred by awarding contract-based damages—calculated based on the difference between the At-Par Price and the Make-Whole Price—and that the District Court should instead have awarded restitution to the Noteholders for Chesapeake's underpayment. Chesapeake argues that "federal law is clear that the remedy for actions taken in reliance on a judgment that is later reversed is restitution putting the note holders back in the same economic position they occupied before the redemption, not a claim for breach of contract." Pl. Br. 2; *see id.* at 21–43. Chesapeake refers to this principle as "the long-established doctrine of restitution after reversal." *Id.* at 3. Chesapeake further argues that, "even applying a contract-based analysis, the district court should have ended up at

---

[3] The District Court exercised its authority under 28 U.S.C. § 2202 of the Declaratory Judgment Act to grant "[f]urther necessary or proper relief based on [its] declaratory judgment . . . against any adverse party whose rights [had] been determined by such judgment." 28 U.S.C. § 2202. Chesapeake, which had originally filed the action for declaratory judgment, but against whom the relief was granted, does not argue on appeal that the District Court erred in holding that § 2202 was the proper procedural mechanism for awarding compensation to the Noteholders.

8

the same place because under New York law it was flatly improper to treat the Make-Whole Price as the measure of contract damages." *Id.* at 2; *see id.* at 43–58. We disagree in both respects.

Substantially for the reasons set forth in the District Court's thorough July 10, 2015 opinion, *see generally Chesapeake III*, 2015 WL 4191419, at *7–17, we conclude that the District Court correctly determined the measure of compensation due to the Noteholders in the circumstances presented. We summarize those reasons as follows.

Under New York law, as the District Court explained, an indenture like the one at issue here is a form of contract. *See, e.g., Bank of N.Y. Tr. Co. v. Franklin Advisers, Inc.*, 726 F.3d 269, 276 (2d Cir. 2013); *Quadrant Structured Prods., Co. v. Vertin*, 23 N.Y.3d 549, 559 (2014). And where a valid and enforceable contract governs the relevant subject matter of the parties' dispute, the contract—rather than principles of restitution—should determine the measure of a party's recovery for events arising from that subject matter. *See, e.g., MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc.*, 157 F.3d 956, 964 (2d Cir. 1998) (observing that, under "well-settled principles of New York law . . . . the existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract . . . for events arising out of the same subject matter" (internal quotation marks omitted)); *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 389 (1987) ("It is impermissible . . . to seek damages in an action sounding in quasi contract where the suing party has fully performed on a valid written agreement, the

existence of which is undisputed, and the scope of which clearly covers the dispute between the parties.").[4] The cases relied upon by Chesapeake do not hold otherwise.[5]

Here, applying New York law, Section 1.7 of the Supplemental Indenture—a contract Chesapeake does not contend was invalid or

---

[4] Section 2(2) of the Restatement (Third) of Restitution and Unjust Enrichment observes that "[a] valid contract defines the obligations of the parties as to matters within its scope, displacing to that extent any inquiry into unjust enrichment." Restatement (Third) of Restitution and Unjust Enrichment § 2(2) (Am. Law Inst. 2011). Contract-based remedies are superior to restitution, the Restatement explains, because a contract "eliminates, or minimizes, the fundamental difficulty of valuation. . . . [T]he parties' own definition of their respective obligations . . . take[s] precedence over the obligations that the law would impose in the absence of agreement. Restitution is accordingly subordinate to contract as an organizing principle of private relationships, and the terms of an enforceable agreement normally displace any claim of unjust enrichment within their reach." *Id.* § 2, cmt. c.

[5] For example, the principal case involving a contract that Chesapeake relies upon is *Northwestern Fuel Co. v. Brock*, where the Supreme Court upheld an award of restitution to defendants who had paid breach-of-contract damages to a plaintiff pursuant to a judgment that the trial court had no jurisdiction to enter. 139 U.S. 216 (1891). The Court reasoned that the trial court had the power "to undo what it had no authority to do originally, and in which it, therefore, acted erroneously, and to restore, so far as possible, the parties to their former position." *Id.* at 219. But *Brock* did *not* hold that restitution should displace the parties' contract rights and obligations. And whereas restitution was necessary in *Brock* to "undo" the trial court's erroneous judgment, restitution is unnecessary and inappropriate here, where the Supplemental Indenture determined the price of the redemption. *Cf.* Restatement (Second) of Contracts § 373(2) (Am. Law Inst. 1981) ("The injured party has no right to restitution if he has performed all of his duties under the contract and no performance by the other party remains due other than payment of a definite sum of money for that performance.").

unenforceable—dictates the Noteholders' recovery arising from Chesapeake's underpayment for its May 13, 2013 redemption. Indeed, properly framed, the relevant subject matter of the parties' dispute is the measure and amount of compensation Chesapeake should have paid the Noteholders for its early redemption. Section 1.7 governed this subject matter, specifying the price Chesapeake was required to pay the Noteholders for an early redemption, which in turn depended on the date of the redemption. *See* J.A. 567. Whereas Section 1.7(b)'s At-Par Price applied to redemptions on or before March 15, 2013, Section 1.7(c)'s Make-Whole Price applied to redemptions after March 15, 2013. *See id.* Because Chesapeake completed its redemption on May 13, 2013, it owed the Noteholders the Make-Whole Price for that redemption, pursuant to Section 1.7(c), *see id.*, and it breached the Supplemental Indenture by paying only the At-Par Price. The correct damages award, then, was the difference between the At-Par Price and the Make-Whole Price, plus prejudgment interest.[6]

To hold otherwise would frustrate the Noteholders' legitimate expectations regarding their rights under the Supplemental Indenture. As the District Court explained, "[f]or the Court to fashion what amounts to a new type of redemption, with its pricing terms to be set *post hoc* by a Court with reference to equitable principles,

---

[6] Although not explicitly contested by the parties on appeal, the District Court's calculation of prejudgment interest correctly used the 6.775 percent rate applicable to overdue payments under the Base and Supplemental Indentures. *See Chesapeake III*, 2015 WL 4191419, at *18.

would confound investors' valid expectations." *Chesapeake III*, 2015 WL 4191419, at *12. Indeed, "[a]n investor could realistically not have anticipated the third scenario in which—if Chesapeake missed the deadline for a Special Early Redemption but redeemed in a good faith belief that it had met the deadline—Noteholders would receive an early-redemption lump-sum payout materially smaller than the Make-Whole Amount." *Id.* It follows, therefore, that "[t]he interest in respecting investors' legitimate expectations . . . supports a payout keyed to the indenture's treatment of redemptions after March 15, 2013." *Id.* at *13.

Chesapeake was similarly on notice at all relevant times that the District Court could require it to pay the Make-Whole Price for its May 13, 2013 redemption. Under the terms of the Supplemental Indenture, which we have previously held to be unambiguous and to have "a definite and precise meaning," Chesapeake's March 15, 2013 notice calling for a redemption on May 13, 2013 "was untimely and ineffective to redeem" at the At-Par Price. *Chesapeake II*, 773 F.3d at 117. Moreover, Chesapeake knew that this had been BNY Mellon's litigation position since the outset and had been confronted with the possibility that a holding by this Court that the redemption was untimely to effect a Special Early Redemption could trigger Chesapeake's obligation to pay the Make-Whole Price on remand.[7]

---

[7] For example, during a March 19, 2013 conference, the District Court asked counsel for Chesapeake what would happen if the District Court ruled that Chesapeake's redemption was timely to effectuate a Special Early Redemption but the ruling was later reversed on appeal. The District Court queried whether "the

Finally, we reject Chesapeake's contention that, even if the District Court properly awarded breach-of-contract damages, it erred by awarding compensation that allowed the Noteholders to recoup in excess of the value of the Notes before the redemption, which Chesapeake argues is equal to "the present value of the lost interest [on the Notes] offset by the lower interest they would have earned from entering into similar transactions" on the date of the redemption. Pl. Br. 55. By analogy to bankruptcy cases where borrowers were forced to prepay loans, Chesapeake argues that, "under New York law, the relevant inquiry is not whether a contractual provision sets forth an amount to be paid for prepayment on a certain date, but whether the relevant contractual provisions clearly and unambiguously provide that the prepayment premium is payable for an unauthorized prepayment under the relevant circumstances." *Id.* at 50. But this syllogism relies on a false premise: Chesapeake did not involuntarily exercise its right of redemption. Instead, Chesapeake opted to redeem early, albeit with the anticipation that it would pay only the At-Par Price. The cases relied upon by Chesapeake are thus inapposite.

---

only way to make [the Noteholders] whole [would be] to in effect pay them what amounts to the present value . . . in effect giving [them] the make-whole value through the backdoor." J.A. 301. Counsel for Chesapeake responded, "[C]ertainly I don't think the Court will give the noteholders the make-whole value through the backdoor," to which the Court replied, "Well, you don't think that. But I'm asking you to assume that the Court of Appeals disagrees with a ruling I make in your favor on timeliness and now wants to fashion a remedy. What is that remedy?" J.A. 301–02.

13

In sum, we conclude, substantially for the reasons set forth in the District Court's July 10, 2015 opinion, which we have summarized here, that the District Court did not err in awarding the Noteholders the difference between the At-Par Price Chesapeake had already paid for its redemption and the Make-Whole Price it should have paid, plus prejudgment interest.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the July 17, 2015 judgment of the District Court.